## In the
## United States Court of Appeals
### For the Seventh Circuit

No. 11-3819

TERESA SOPPET and LOIDY TANG, individually
and on behalf of a class,

*Plaintiffs-Appellees*,

*v.*

ENHANCED RECOVERY COMPANY, LLC,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 10 C 5469—**Matthew F. Kennelly**, *Judge*.

ARGUED APRIL 19, 2012—DECIDED MAY 11, 2012

Before EASTERBROOK, *Chief Judge*, and FLAUM and
WOOD, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. The Telephone Consumer
Protection Act (TCPA or "the Act"), 47 U.S.C. §227, is well
known for its provisions limiting junk-fax transmissions.
A less-litigated part of the Act curtails the use of auto-
mated dialers and prerecorded messages to cell phones,

whose subscribers often are billed by the minute as soon as the call is answered—and routing a call to voicemail counts as answering the call. An automated call to a landline phone can be an annoyance; an automated call to a cell phone adds expense to annoyance. This suit arises from dozens of automated calls made to two cell numbers, which went to voicemail and thus consumed minutes from the subscribers' plans. All of the calls were made in a futile effort to reach previous subscribers to these numbers.

The situation is this: Customer incurs a debt and does not pay. Creditor hires Bill Collector to dun Customer for the money. Bill Collector puts a machine on the job and repeatedly calls Cell Number, at which Customer had agreed to receive phone calls by giving his number to Creditor. See *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 23 FCC Rcd. 559 ¶¶ 9, 10 (Jan. 4, 2008) (*2008 TCPA Order*). The machine, called a predictive dialer, works autonomously until a human voice comes on the line. If that happens, an employee in Bill Collector's call center will join the call. But Customer no longer subscribes to Cell Number, which has been reassigned to Bystander. A human being who called Cell Number would realize that Customer was no longer the subscriber. But predictive dialers lack human intelligence and, like the buckets enchanted by the Sorcerer's Apprentice, continue until stopped by their true master. Meanwhile Bystander is out of pocket the cost of the airtime minutes and has had to listen to a lot of useless voicemail. (We use Bill Collector as the caller, but this simplified description could as easily use

an advertiser that relies for consent on earlier transactions with Customer, or a box that Consumer checked on a vendor's web site.)

In this litigation, Teresa Soppet and Loidy Tang play the roles of Bystander; AT&T plays Creditor; Enhanced Recovery Co. plays the role of Bill Collector. Neither Soppet nor Tang ever consented to receive automated or recorded calls from Enhanced Recovery—but the two Customers did agree to receive calls at the numbers later assigned to Soppet and Tang. Enhanced Recovery called Soppet's number 18 times and Tang's 29 times. By the time it started calling, at least three years had passed since the two Customers furnished the Cell Numbers to AT&T as a way to contact them. Soppet and Tang sued under §227(b)(3), which authorizes an award of actual damages, or $500 per violation, whichever is greater. These amounts are trebled for wilful violations.

The district court certified a class with Soppet and Tang as its representatives. Enhanced Recovery contended that the Customers' consents to be called at the two Cell Numbers remained in force after the numbers' reassignment to Soppet and Tang. The district court held not—that only the consent of the subscriber assigned to Cell Number at the time of the call (or perhaps the person who answers the phone) justifies an automated or recorded call. 2011 U.S. Dist. LEXIS 92888 (N.D. Ill. Aug. 21, 2011). The judge certified the issue for interlocutory review under 28 U.S.C. §1292(b), and a motions panel of this court agreed to entertain the appeal, in large measure because whose consent is essential—the

original subscriber, or the current one—has yet to be addressed by an appellate court. That was true when we accepted the appeal and remains true today.

The basic rule appears in §227(b)(1), which reads:

> It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call[.]

Neither §227(b)(1) nor any other part of the Act defines the phrase "called party", but this language and several other parts of §227 supply clues. Subparagraph (A) asks whether a "called party" consented to the call, and clause (iii) contains the phrase "for which the called party is charged". The second use of "called party" must mean Cell Number's current subscriber, because only the current subscriber pays. The presumption that a statute uses a single phrase consistently, at least over so short a span, see *Mohasco Corp. v. Silver*, 447 U.S. 807 (1980), implies that the consent must come from the current subscriber.

The phrase "called party" occurs several more times in §227. Subparagraph (b)(1)(B) uses it identically to the first appearance in subparagraph (b)(1)(A). Subparagraph (b)(2)(C) says that the Federal Communications Commission may issue regulations allowing automated calls to a cell phone (but not a pager or specialized mobile radio service) when the calls "are not charged to the called party"; this use is identical to the sense "called party" bears in clause (b)(1)(A)(iii). And the phrase appears three times in §227(d)(3). Subsection (d) as a whole bears the caption "Technical and procedural standards"; paragraph (3) reads:

**Artificial or prerecorded voice systems**

The Commission shall prescribe technical and procedural standards for systems that are used to transmit any artificial or prerecorded voice message via telephone. Such standards shall require that—

(A) all artificial or prerecorded telephone messages (i) shall, at the beginning of the message, state clearly the identity of the business, individual, or other entity initiating the call, and (ii) shall, during or after the message, state clearly the telephone number or address of such business, other entity, or individual; and

(B) any such system will automatically release the called party's line within 5 seconds of the time notification is transmitted to the system that the called party has hung up, to allow the

> called party's line to be used to make or receive
> other calls.

The first and third appearances of "called party" in sub-paragraph (B) designate the current subscriber of the called number; the second use refers to the person who answers the call, because only that person can hang up. For cell service, the subscriber and the person who answers almost always are the same, given the norm that one person does not answer another's cell phone. There could be differences between subscriber and answerer in emergencies, however, or in households where the cell subscriber puts the handset in a cradle that routes calls to other phones that family members or guests treat as if they were landline equipment.

Section 227 uses the phrase "called party" seven times all told. Four unmistakably denote the current subscriber (the person who pays the bills or needs the line in order to receive other calls); one denotes whoever answers the call (usually the subscriber); and the others (the two that deal with consent) have a referent that cannot be pinned down by context. Enhanced Recovery asks us to conclude that, despite the presumption of uniform usage within a single statutory section, those two uses, and those two alone, denote the person Bill Collector is trying to reach—in other words, Customer, who Enhanced Recovery dubs the "intended recipient of the call."

The phrase "intended recipient" does not appear anywhere in §227, so what justification could there be for equating "called party" with "intended recipient of the call"? (Section 227(b)(1) does use the word "recipient" in a

context where "recipient" means "current subscriber"; this doesn't remotely suggest that "called party" must mean "intended recipient.") Enhanced Recovery starts with the proposition that consent is effective until revoked and infers that Customer's consent thus must last until Bystander, the new subscriber, revokes it. The idea that one person can revoke another's consent is odd. Anyway, there can't be any long-term consent to call a given Cell Number, because no one—not Customer, not Bystander, not even the phone company—has a property right in a phone number. See *Jahn v. 1-800-FLOWERS.com, Inc.*, 284 F.3d 807 (7th Cir. 2002). Consent to call a given number must come from its current subscriber. Enhanced Recovery implicitly acknowledges this by saying that the current subscriber can rescind any earlier consent to call Cell Number. But this really means that Customer's authority to give consent, and thus any consent previously given, lapses when Cell Number is reassigned.

Suppose that Customer had given "consent" to call someone else's number—perhaps Customer put down his own number with a typo, or the number of a person against whom Customer held a grudge. Enhanced Recovery conceded at oral argument that it could not invoke Customer's "consent" to avoid liability to the subscriber of whatever number Customer wrote down. That pretty much gives away the game, because even when the Cell Number that Debt Collector calls stems from Customer's error or malice, Debt Collector still could say that Customer is the "intended recipient of the call." It is hard to see why Customer's error should be treated differently from the reassignment of a number;

in both situations, the "called party" is the Cell Number's current subscriber, not the person Debt Collector wants to reach. Suppose Smith, trying to reach Jones, dials the number with a typo and reaches Perkins, who says "you have the wrong number." No colloquial user of English would call Jones rather than Perkins the "called party." So too if Jones used to be the subscriber of a number later reassigned to Perkins, and Smith's contacts file is out of date.

Consider another analogy. Borrower agrees with Bank, as a condition of a loan, that Bank can enter Borrower's garage and repossess his car if he does not keep current on payments. After signing this contract, Borrower sells his house, moves, does not tell Bank his new address, and defaults on the loan. Can Bank now enter the garage of the house where Borrower used to live and seize the car the repo men find there? Surely not. Borrower can consent to an entry on his own land and the use of his own car as collateral, but he can't consent to an entry on anyone else's land or the seizure of someone else's property. Borrower's consent follows Borrower's change of address: Bank has permission to enter the garage where Borrower keeps his car at the time of entry; Bank does not have consent to enter the garage of the new owner of Borrower's old house. Similarly, Customer could consent expressly to receive calls at his *current* Cell Number, even if that number changes, but simply providing Creditor with a number—which is how Customer consented here—does not authorize perpetual calls to that number after it has been reassigned to someone else.

Enhanced Recovery's argument does not rest on either a linguistic analysis of §227 or the way the law understands consent. Instead Enhanced Recovery asks us to recognize that people are moving in droves from landline to cell service, which brings §227(b)(1) into operation more often; that numbers are portable (so numbers that used to reach landline phones may start to ring cell phones); and that making it risky to use predictive dialers will drive up the expense of debt collection—which in the long run will lead to higher prices across the board (since firms have to cover the full cost of doing business). Given these facts, Enhanced Recovery insists, it would be absurd to read "called party" in §227(b)(1) to mean the current subscriber, as opposed to the person the caller wants to reach.

Courts do try to avoid imputing nonsense to Congress. This means, however, modest adjustments to texts that do not parse. It does not mean—at least, should not mean—substantive changes designed to make the law "better." That would give the judiciary entirely too much law-making power. When a text can be applied as written, a court ought not revise it by declaring the legislative decision "absurd." See, e.g., *Jaskolski v. Daniels*, 427 F.3d 456 (7th Cir. 2005); *United States v. Logan*, 453 F.3d 804 (7th Cir. 2006), affirmed, 552 U.S. 23 (2007); *Spivey v. Vertrue, Inc.*, 528 F.3d 982 (7th Cir. 2008). See also John Manning, *The Absurdity Doctrine*, 116 Harv. L. Rev. 2387 (2003). Nor should a court try to keep a statute up to date. Legislation means today what it meant when enacted. See, e.g., *National Broiler Marketing Ass'n v. United States*, 436 U.S. 816, 827 (1978).

Section 227 was enacted in 1934. The provision covering automated calls to cell phones was added in 1991, and the statute has been amended several times since, most recently in December 2010. If Congress has failed to appreciate changes in the telecommunications business, Enhanced Recovery and the bill collectors' trade association (ACA International, which filed an *amicus* brief) should alert their lobbyists. Carl von Clausewitz wrote that war is the continuation of politics by other means, *Vom Kriege* (1832), but adjudication is not the continuation of legislation by other means.

Of course, the trade association already may have tried and failed to persuade Congress to replace "called party" with "intended recipient of the call." That substitution would expose new subscribers to unwanted calls and unjustified expense. Congress might have thought the current approach preferable, as a safeguard of persons assigned to recycled numbers, even though this protection comes at some cost to bill collectors.

Bill collectors need not abandon predictive dialers. Other options remain:

- Have a person make the first call (§227(b)(1) is limited to automated calls), then switch to a predictive dialer after verifying that Cell Number still is assigned to Customer.

- Use a reverse lookup to identify the current subscriber to Cell Number.

- Ask Creditor, who obtained Customer's consent, whether Customer still is associated with Cell Number—and get an indemnity from

> Creditor in case a mistake has been made.
> (Indemnity may be automatic under ¶10 of
> the *2008 TCPA Order*, which states that calls
> placed by a third-party collector on behalf of
> a creditor are treated as having been made
> by the creditor itself.)

The third of these options is especially attractive when Creditor is a phone company—though perhaps knowing that Creditor is a telecommunications provider should itself alert Bill Collector that Cell Number no longer is assigned to Customer. If you don't pay your phone bill, the phone company cuts off service and assigns the number to someone else.

Knowing that Creditor is a phone company, and inferring that Customer's service will have been discontinued, does not necessarily solve Bill Collector's problem, however. Customer may have agreed to be reached at more than one number. For example, Customer might subscribe to landline service from AT&T and cell service from Verizon, and give both numbers. If AT&T assigns an overdue account, Debt Collector might infer that Customer no longer can be reached at the number on AT&T's network, but Customer might still be the subscriber to the number on Verizon's network.

One more argument requires brief discussion. Several parts of the Act require or permit the FCC to issue regulations, and the Commission also declares its understanding of provisions on which it is not authorized to issue regulations. As we've mentioned, the FCC has some authority to allow exceptions to §227(b). In 2005 ACA International asked the Commission to exempt

bill collection from the statutory system. The *2008 TCPA Order* addresses this subject and some others. The Commission concluded that the bill-collection industry does not need an exception because §227(b)(1)(A) already allows calls with the "express consent" of the called party. The FCC opined that "the provision of a cell phone number to a creditor, *e.g.*, as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt." *2008 TCPA Order* at ¶9.

Both Enhanced Recovery and ACA International contend that this language is conclusive in their favor. The FCC said that providing a number gives "express consent by the cell phone subscriber to be contacted *at that number* regarding the debt." (Emphasis added.) We don't get the argument. Of course a subscriber's consent to be called at a given number is consent "to be contacted at that number." The FCC was addressing the meaning of the statutory words "express consent". It was *not* addressing the meaning of the statutory words "called party" or stating a view about what happens if a number is reassigned after a subscriber gives consent. This litigation concerns the meaning of "called party." The FCC did not define that term in the *2008 TCPA Order* or, as far as we know, anywhere else.

We conclude that "called party" in §227(b)(1) means the person subscribing to the called number at the time the call is made. The district court's decision is

AFFIRMED.