**Torrey GRAGG, on his own behalf and on behalf of similarly situated persons, Plaintiff,**

v.

**ORANGE CAB COMPANY, INC., a Washington corporation; and Ridecharge, Inc., a Delaware corporation d/b/a Taxi Magic, Defendants.**

Case No. C12–0576RSL.

United States District Court, W.D. Washington, at Seattle.

Signed Feb. 7, 2014.

Order Denying Reconsideration Feb. 28, 2014.

Albert H. Kirby, Kirby Law Group, Donald W. Heyrich, Heyrich Kalish McGuigan PLLC, Seattle, WA, for Plaintiff.

Kenneth E. Payson, Ryan C. Gist, Davis Wright Tremaine, Seattle, WA, for Defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

ROBERT S. LASNIK, District Judge.

### I. INTRODUCTION

This matter comes before the Court on "Defendants' Motion for Summary Judgment" (Dkt. # 69) pursuant to Fed. R. Civ. P. 56. Plaintiff, who represents himself and similarly situated persons, received a text message from defendants which he alleges violates the Telephone Consumer Protection Act (TCPA), 47 U.S.C. § 227, and the Washington Commercial Electronic Mail Act (CEMA).[1] RCW §§ 19.190.010–110. Defendants assert that summary judgment is appropriate as they did not utilize an "automatic telephone dialing system" (ATDS) when sending the text message—one of the required elements of a TCPA claim. *See Meyer v. Portfolio Recovery Assocs., LLC,* 707 F.3d 1036, 1043 (9th Cir.2012).

The Court has reviewed the parties' submissions. For the reasons discussed below, the Court GRANTS defendants' motion for partial summary judgment on plaintiff's TCPA claim.

---

1. In spite of defendants' assertion that plaintiff's TCPA claim is his "sole surviving cause of action," Motion (Dkt. # 69) at 5, this Court previously found that "plaintiff sufficiently pled a violation of CEMA." *Gragg v. Orange Cab Co.,* 942 F.Supp.2d 1111, 1117 (W.D.Wash.2013). As defendants' motion for summary judgment does not address plaintiff's CEMA claim, this order only concerns plaintiff's CEMA claim, this order only concerns plaintiff's TCPA cause of action.

## II. Discussion

### A. Background

Defendant Orange Cab Company, Inc. (Orange Cab) utilizes TaxiMagic, a Ridecharge, Inc. product, as a means of remaining competitive in a technologically advancing industry. Motion (Dkt. # 69) at 7. TaxiMagic is a computer program that links together Orange Cab's dispatch terminals, the cab drivers' Mobile Data Terminals, and an SMS modem in order to send text message dispatch notifications to Orange Cab customers. DePasquale Declaration (Dkt. # 71) at 2. Following dispatch, TaxiMagic transmits a text message notification to the customer which states the cab number and time the dispatcher's request was accepted by the driver. Motion (Dkt. # 69) at 7. The notification may also include the driver's name, the distance from the cab dispatch location to the customer, and an invitation to download the TaxiMagic smartphone "app." [2] *Id.*

Orange Cab uses the TaxiMagic program on a computer system that generates a text message incorporating customer-specific data and then transmits a notification to the provided or procured telephone number. *Id.* at 11. The Orange Cab dispatcher who answers the phone obtains the customer's name and telephone number, along with the requested pickup and dropoff locations. *Id.* at 10. The customer's number may also be captured using Caller ID. Heyrich Declaration (Dkt. # 84)

Ex. E 134:10–13. The dispatcher then manually inputs this information into the dispatch terminal. Motion (Dkt. # 69) at 10. When the dispatcher presses "enter," the information is relayed both to the TaxiMagic program and the driver closest to the customer's requested pickup location. *Id.* By pressing "accept" on his or her Mobile Data Terminal, the driver communicates his or her acceptance to TaxiMagic. *Id.* at 11. The program then composes the notification and transmits the message to the customer's telephone number. Id. The system is capable of generating and sending dispatch notifications only in response to a driver's acceptance of an individual customer's request. *Id.*

Plaintiff called Orange Cab and requested a taxi at 5:17 PM on February 25, 2012. Gist Declaration (Dkt. # 70) Ex. I. Plaintiff did not provide his telephone number which was instead captured using Caller ID. Response (Dkt. # 83) at 4. The dispatcher created plaintiff's cab request by manually inputting his information, and then pressed "enter" to transmit the data to TaxiMagic and the nearest available driver. Gist Declaration (Dkt. # 70) Ex. H. A driver transmitted his acceptance of plaintiff's request by pressing "accept" on his Mobile Data Terminal at 5:20 PM. *Id.* Ex. J. TaxiMagic then sent plaintiff the offending message which read "Taxi # 850 dispatched @ 05:20. Smart phone? Book our cabs with Taxi Magic—# 1 FREE taxi booking app http://cabs.io/29e1b7d." [3] *Id.* at 12.

---

2. Ridecharge, Inc. offers a smartphone "app" as part of a family of products to assist customers in requesting taxis. Gist Declaration (Dkt. # 70) Ex. A 6:22–23.

3. Plaintiff received the text dispatch notification at 9:04 PM on February 26, 2012, more than twenty-four hours after he had requested a taxi from Orange Cab. Second Amended Complaint (Dkt. # 44) at 4. However, defendants' records show that the text dispatch

notification was transmitted when the driver hit "accept" at 5:20 PM on February 25, 2012. Gist Declaration (Dkt. # 70) Ex. J. Although the parties have been unable to discover why plaintiff did not receive the message until the following day, the evidence shows that the message was sent at 5:20 PM on February 25, 2012 and was delayed for an unknown reason. Plaintiff's contention that the text message was sent, rather than re-

## B. Summary Judgment

Summary judgment is appropriate if, viewing the evidence in the light most favorable to the nonmoving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *see L.A. Printex Indus., Inc. v. Aeropostale, Inc.,* 676 F.3d 841, 846 (9th Cir.2012). The moving party "bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party need not "produce evidence showing the absence of a genuine issue of material fact" but instead may discharge its burden under Fed.R.Civ.P. 56 by "pointing out . . . that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. 2548. "An issue is 'genuine' only is there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party." *In re Barboza,* 545 F.3d 702, 707 (9th Cir. 2008) (internal citations omitted).

## C. The Telephone Consumer Protection Act

█ "The three elements of a TCPA claim are: (1) the defendant called a cellular telephone number;[4] (2) using an automatic telephone dialing system; (3) without the recipient's prior express consent." *Meyer,* 707 F.3d at 1043. Equipment is an ATDS if it either has "the capacity to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers," 47 U.S.C. § 227(a)(1), or is a predictive dialer with the capacity to dial telephone numbers from a list without human intervention. *In the Matter of Rules & Regula-*

*tions Implementing the TCPA of 1991,* 23 F.C.C.R. 559, 566 ¶ 14 (Jan. 4, 2008) ("2008 FCC Ruling").

## 1. Defendants' System Lacked "the Capacity to Store or Produce Telephone Numbers to be Called, Using a Random or Sequential Number Generator"

█ "When evaluating the issue of whether equipment is an ATDS, the statute's clear language mandates that the focus must be on whether the equipment has the *capacity* 'to store or produce telephone numbers to be called, using a random or sequential number generator.' " *Satterfield,* 569 F.3d at 951. As such, "a system need not actually store, produce, or call randomly or sequentially generated telephone numbers, it need only have the capacity to do it." *Id.*

Plaintiff urges the Court to rule that the modem utilized by defendants to operate the TaxiMagic program is the "system" as envisioned by *Satterfield.* Response (Dkt. # 83) at 9. Under this interpretation, as the modem has the ability to both store multiple telephone numbers in an address book and transmit a mass text message to those numbers, it would be an ATDS under the TCPA. *Id.; see* Heyrich Declaration (Dkt. # 84) Ex. 72 at TM005308, TM005344.

The Court declines to adopt an interpretation of "system" that would lead to an absurd result. *See Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 584, 102 S.Ct. 3245, 73 L.Ed.2d 973 (1982) (noting that "interpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available"). Adopting plaintiff's broad interpretation that any technology with the **potential**

---

ceived, late the following night is unsupported conjecture. *See* Response (Dkt. # 83) at 5.

4. A text message is a "call" under the TCPA. *See Satterfield v. Simon & Schuster, Inc.,* 569 F.3d 946, 954 (9th Cir.2009).

capacity to store or produce and call telephone numbers using a random number generator constitutes an ATDS would capture many of contemporary society's most common technological devices within the statutory definition. *See Hunt v. 21st Mortg. Corp.,* No. 2:12–CV–2697–WMA, 2013 WL 5230061, at *4 (N.D.Ala. Sept. 17, 2013) (noting that, as, "in today's world, the possibilities of modification and alteration are virtually limitless," this reasoning would subject all iPhone owners to 47 U.S.C. § 227 as software potentially could be developed to allow their device to automatically transmit messages to groups of stored telephone numbers). The Court will therefore determine the TaxiMagic program's status under the TCPA based on the system's **present,** not **potential,** capacity to store, produce, or call randomly or sequentially generated telephone numbers.

■ In order for defendants' system to constitute as ATDS, it must have the capacity to "store, produce, or call randomly or sequentially generated telephone numbers." *Satterfield,* 569 F.3d at 951. While plaintiff has gone to great lengths to demonstrate the technological limits of defendants' system, he has failed to provide the Court with any evidence that either Taxi-Magic or the modem has the capacity to **randomly or sequentially generate** telephone numbers to be stored, produced, or called.[5] " 'Random number generation' means random sequences of 10 digits, and 'sequential number generation' means (for example) (111) 111–1111, (111) 111–1112, and so on." *Griffith v. Consumer Portfolio Serv., Inc.,* 838 F.Supp.2d 723, 725 (N.D.Ill.2011). TaxiMagic is programmed to send dispatch notifications in response to an individual customer's request for a cab. Motion (Dkt. # 69) at 11. The telephone numbers utilized by the system are those provided directly by customers or captured using Caller ID and inputted by the dispatcher. *Id.* at 10; Heyrich Declaration (Dkt. # 84) Ex. E p. 134: 10–13. Plaintiff has submitted no evidence that the TaxiMagic program can autonomously randomly or sequentially generate numbers to be dialed as required to fulfill the statutory definition of an ATDS. Additionally, the Court can find no evidence in the modem's manual, Heyrich Declaration (Dkt. # 84) Ex. 72, that the device can be programmed to generate telephone numbers in this fashion. The Court therefore finds that defendants' TaxiMagic program does not constitute an ATDS.

## 2. Defendant's System is not a Predictive Dialer

■ Acknowledging that the teleservices industry had evolved, the FCC ruled that predictive dialers are subject to the TCPA's restriction on autodialers. "2008 FCC Ruling" at 566 ¶ 14. The "basic function of such equipment . . . [is] the capacity to dial [lists of] numbers without human intervention." *Id.; see also Soppet v. Enhanced Recovery Co.,* 679 F.3d 637, 638–39 (7th Cir.2012) ("The machine, called a predictive dialer, works autonomously").

TaxiMagic does not function in the manner prohibited by the FCC. In order for a text dispatch notification to be sent to a customer, the customer must have first provided some amount of information to the dispatcher, the dispatcher must have pressed "enter" to transmit that information to both the TaxiMagic program and the nearest available driver, and the driver must have pressed "accept" on his or her Mobile Data Terminal. Motion (Dkt.

---

**5.** Alternatively, the TaxiMagic program could be an ATDS if plaintiff can demonstrate that it operates as a predictive dialer. As noted above, a predictive dialer must have the capacity to dial telephone numbers from a list without human intervention. "2008 FCC Ruling," at 566 ¶ 14. This contention will be addressed in the following section.

# 69) at 10–11. Following the Ninth Circuit's " 'common sense' approach to TCPA claims," *Freidman v. Massage Envy Franchising, LLC,* No. 3:12–cv–02962–L–RBB, 2013 WL 3026641, at *4 (S.D.Cal. June 13, 2013) (quoting *Chesbro v. Best Buy Stores, L.P.,* 705 F.3d 913, 918 (9th Cir.2012)), the level of human agency involved in transmitting the text dispatch notifications is sufficient to qualify as "human intervention." The system is able to dial and transmit the dispatch notification only after the driver has physically pressed "accept": human intervention is essential. *See* Motion (Dkt. # 69) at 11. The Court therefore finds that the Taxi-Magic program is not a predictive dialer.

## III. Conclusion

The Court finds that plaintiff has not raised a genuine issue of material fact regarding their assertion that the Taxi-Magic program is an ATDS. The evidence demonstrates that defendants' integrated system is not an ATDS but is in fact a limited setup which relies on human intervention to transmit dispatch notifications to customers.

For all the foregoing reasons, the Court GRANTS defendants' motion for partial summary judgment on plaintiff's TCPA claim.

## ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION

On February 7, 2014, the Court granted defendants' motion for partial summary judgment regarding plaintiff's Telephone Consumer Protection Act ("TCPA") claim. Dkt. # 113. Plaintiff has filed a timely motion for reconsideration in which he argues that new legal authority undercuts the Court's analysis and that the Court should permit discovery regarding the capacity of defendants' system to function as an automatic telephone dialing system ("ATDS"). Dkt. # 116. Motions for reconsideration are disfavored in this district and will be granted only upon a "showing of manifest error in the prior ruling" or "new facts or legal authority which could not have been brought to [the Court's] attention earlier with reasonable diligence." LCR 7(h)(1). Plaintiff has not met this burden.[1]

Defendants moved for summary judgment based on the undisputed characteristics of its proprietary dispatch notification system. Dkt. # 69. Defendants expressly argued that their system is unable to store or produce telephone numbers using a random or sequential number generator (47 U.S.C. § 227(a)(1)) or to dial telephone numbers from a list without human intervention (*In the Matter of Rules & Regulations Implementing the TCPA of 1991,* 23 F.C.C.R. 559, 566 ¶¶ 13–14 (Jan. 4, 2008)). Despite being put on notice that the functionality of defendants' system was the key issue, plaintiff did not request an opportunity to conduct additional discovery under Fed.R.Civ.P. 56(d).[2] Rather, plaintiff ar-

---

1. This matter can be decided on the motion papers. Plaintiff's request for oral argument is DENIED.

2. Nor has he shown, even now, that a continuance would have been appropriate. Plaintiff argues that he should be permitted to conduct discovery regarding (a) modifications that could be made to defendants' system to make it function as an ATDS and (b) how difficult it would be to make such modifications. As discussed below, however, the Court has in-

terpreted "capacity" to mean "is capable of," not "could be capable of" or "has the potential to be capable of." In effect, plaintiff simply disagrees with the Court's interpretation of the governing statute. The discovery he seeks would not overcome the deficiency identified by the Court, namely that defendants' system, as currently configured, does not have the capacity to store or produce telephone numbers using a random or sequential number generator or to dial tele-

gued that defendants' equipment (a modem) could be programmed differently so that it could store lists of telephone numbers and send messages without human intervention. Plaintiff implicitly conceded that defendants' system, as currently configured, did not meet either definition of an ATDS. Being fully informed of the parties' respective positions and having carefully analyzed the relevant case law, the Court found that simply using a computer (or iPhone or modem) that could be, but was not, paired with software that would enable it to act as an ATDS was not enough to satisfy the "capacity" requirement of the TCPA. To hold otherwise would subject virtually all calls and text messages to the TCPA, since most modern computing systems and cell phones would, if properly programmed, be capable of storing telephone numbers and dialing them automatically if given a pre-defined trigger.

In his motion for reconsideration, plaintiff relies on two recent district court cases in which defendants' motions for summary judgment were denied on the ground that plaintiffs had raised a genuine issue of fact regarding the existence of an ATDS. In both cases, the courts suggested that the plaintiffs had met their burdens on summary judgment by showing that defendants could obtain and install new software that would allow their systems to act as ATDSs. *See Hunt v. 21st Mortgage Corp.*, 2014 WL 426275, at *5 (N.D.Ala. Feb. 4, 2014) (defendant's destruction of its system at a time when it knew of plaintiff's claim made it impossible to determine, as a matter of law, whether enabling software "was in fact installed or could have easily been installed"); *Sherman v. Yahoo! Inc.*, 997 F.Supp.2d 1129, 1136, 2014 WL 369384, at *7 (S.D.Cal. Feb. 3, 2014) ("Plaintiff points to the testimony of Yahoo's representative who testified that it

could, if it wanted to, dial all of the telephone numbers in its database with a notification text message by writing new software code instructing the system to do so."). These district court decisions are not, of course, binding. Nor are they particularly persuasive.

The governing authority in this circuit is *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 (9th Cir.2009). Plaintiff and the district courts in *Hunt* and *Sherman* cite *Satterfield* in support of their expansive interpretation of the word "capacity" when determining whether defendant used an ATDS. The Ninth Circuit's discussion of the term arose in a very narrow context, however, and does not justify the later judicial gloss on which plaintiff relies. The defendants in *Satterfield* purchased and stored a list of 100,000 telephone numbers, compiled a promotional message for a Stephen King book, and sent the combined file to a third-party for transmission to cell phone users. The district court focused its analysis on 47 U.S.C. § 227(a)(1) and concluded that, because the process did not involve "a random or sequential number generator," defendants had not used an ATDS. *Satterfield*, 569 F.3d at 950–51. The Ninth Circuit found that the district court's focus was in error and that there was evidence, in the form of expert testimony, that a system that "stored telephone numbers to be called and subsequently dialed those numbers automatically and without human intervention" was also an ATDS. *Id.* at 951. This alternative definition of an ATDS had been approved by the Federal Communications Commission, and the Ninth Circuit found it persuasive. Although the expert "never specifically declared" that defendants' system could actually function as a predictive dialer, the "limited record demonstrates that there is a genuine issue of material

phone numbers from a list without human     intervention.

fact whether this telephone system has the requisite capacity to be considered an ATDS under the TCPA." *Id.*

 There is nothing in *Satterfield* which supports, much less requires, an interpretation of the word "capacity" to mean anything more than "is capable of." The TCPA defines an ATDS as "equipment which has the capacity" to do certain things. 47 U.S.C. § 227(a)(1). The definition is written in the present tense, which is consistent with the consumer protection goals of the TCPA. In *Satterfield,* the Ninth Circuit noted that the expert had not actually stated that defendants' system was capable of dialing the list of stored telephone numbers without human intervention, but found that there was enough in the record to give rise to a genuine issue of fact on the existence of an ATDS. The case did not involve a situation in which it was clear that the system could not perform the functions of a predictive dialer unless it were modified or altered in some way. There is no indication that the Ninth Circuit would deem a system that has to be reprogrammed or have new software installed in order to perform the functions of an ATDS to be an ATDS. The Court declines to expand the definition of an ATDS to cover equipment that merely has the potential to store or produce telephone numbers using a random or sequential number generator or to dial telephone numbers from a list without human intervention. Equipment that requires alteration to perform those functions may in the future be capable, but it does not currently have that capacity. This interpretation is entirely consisted with *Satterfield.*

Plaintiff, relying on *Hunt* and *Sherman,* wants to sweep within the definition of an ATDS any hardware that could, if programmed differently, send the kind of automated messages that Congress found objectionable when it enacted the TCPA. This argument is not consistent with the language of the statute and its impacts would be untenable. Defendants' system, as presently configured, does not randomly or sequentially generate numbers and is not able to send a text message without human input. It is therefore incapable of performing as an ATDS. The mere fact that defendants' modem could, if paired with different software, develop the requisite capability is not enough under the TCPA or *Satterfield.* To hold otherwise would subject almost all sophisticated computers and cell phones to TCPA liability, a result Congress surely did not intend.

For all of the foregoing reasons, the Court declines to reconsider its summary judgment dismissal of plaintiff's TCPA claim. Plaintiff's request for certification to take an interlocutory appeal, which the Court is inclined to grant, will be considered when fully briefed.