[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-14564
_____

D.C. Docket No. 1:11-cv-22681-RNS

LYNN BRESLOW,
individually and on behalf of "R.B.," a minor,

Plaintiff – Appellee,

WELLS FARGO BANK, N.A.,
a national bank,
d.b.a. Wachovia Bank N.A.,

Defendant – Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(June 5, 2014)

Before TJOFLAT and WILSON, Circuit Judges, and PROCTOR,[*] District Judge.

TJOFLAT, Circuit Judge:

_____

[*] The Honorable R. David Proctor, District Judge, United States District Court for the Northern District of Alabama, sitting by designation.

The Telephone Consumer Protection Act of 1991 ("TCPA"), Pub. L. No. 102-243, 105 Stat. 2394, makes it unlawful to make any call using an automatic telephone dialing system (an "autodial system") to a cellular telephone without the prior express consent of the "called party."  47 U.S.C. § 227(b)(1)(A)(iii) (2006).[1] In this case, which comes to us on interlocutory appeal, we are asked to determine the proper interpretation of the term "called party."

The facts of this case are straightforward and for the most part undisputed. Wells Fargo made multiple calls[2] using an autodial system to a cell phone number assigned to Lynn Breslow.  Breslow did not consent to Wells Fargo's use of an autodial system to call the number.  Although Breslow was the named account

---

[1] Section 227(b)(1) provides, in pertinent part:

It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—

(A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—

. . .

(iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call . . . .

[2] The exact number of phone calls remains in dispute but is irrelevant to the resolution of the appeal.  The District Court found that at least two calls were made, and Breslow contends as many as 1,400 calls were made to the cell phone number.

2

holder for the cell phone number, she was not the primary user of the phone. The cell phone was used exclusively by her minor child, "R.B." [3]

On August 11, 2011, Breslow, individually and on behalf of "R.B.," filed suit in the District Court for the Southern District of Florida, alleging that Wells Fargo violated the TCPA's prohibition on autodialing cell phones without the express consent of the called party.[4] Following discovery, Breslow filed a motion for partial summary judgment on the issue of Wells Fargo's liability. In response, Wells Fargo also filed a motion for summary judgment. It accompanied its motion with an affidavit of one of its employees, who stated that Wells Fargo had called the cell phone number used by R.B. to collect a debt from a former customer who had listed the phone number on a Wells Fargo account application. The affidavit further stated that Wells Fargo was unaware that the cell phone number was no longer assigned to the former customer and that the former customer never revoked his consent or requested that Wells Fargo cease calling the number. Wells Fargo

---

[3] The record does not establish whether R.B. consented to Wells Fargo's calling via autodial system.

[4] The TCPA creates a private right of action for violations of the prohibition on autodialing. 47 U.S.C. § 227(b)(3). Successful plaintiffs are entitled to an injunction, id. § 227(b)(3)(A), actual losses caused by the violation or $500 for each violation (whichever is greater), id. § 227(b)(3)(B), or both injunctive relief and money damages id. § 227(b)(3)(C). "If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) . . . ." Id. § 227(b)(3).

3

argued that this former customer—the intended recipient of the autodial call—was the "called party" for purposes of § 227, and because he had consented to being called via automatic dialing system, the TCPA's prohibition did not apply.

The District Court concluded that the "'called party' for purposes of [47 U.S.C.] § 227(b)(1)(A)(iii) was not [the] Former Customer, but the Plaintiffs," Breslow and R.B. Accordingly, the court granted partial summary judgment in their favor. Wells Fargo then sought a certification for interlocutory appeal, see 28 U.S.C. § 1292(b),[5] which this court granted on the issue of the proper meaning of the term "called party."[6] We conclude that "called party," for purposes of § 227(b)(1)(A)(iii) means the subscriber to the cell phone service or user of the cell phone called. We therefore affirm.

---

[5] 28 U.S.C. § 1292(b) (2006) provides

When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order

[6] "We review the district court's grant[] of partial summary judgment . . . de novo, reviewing all facts and reasonable inferences in the light most favorable to the nonmoving party, and applying the same standard as the district court." Allison v. McGhan Med. Corp., 184 F.3d 1300, 1306 (11th Cir. 1999).

## I.

A caller does not violate the TCPA's prohibition on autodialing cell phone numbers if the caller has the express prior consent of the "called party." 47 U.S.C. § 227(b)(1)(A). However, neither the TCPA nor the regulations promulgated by Federal Communication Commission (the "FCC") define the term "called party." We are therefore left to apply traditional methods of statutory interpretation to determine who is the "called party" for purposes of § 227(b)(1)(A). Supbart A looks to the text of the statute to define the term. Finding the text lacking, in subpart B we consider legislative history and intent and conclude that the term "called party" means the subscriber to the cell phone service or the user of the cell phone called.

## A.

We begin with the familiar canon of statutory construction: "we look first to the plain meaning of the statute." Moore v. Am. Fed'n of Television & Radio Artists, 216 F.3d 1236, 1244 (11th Cir. 2000). Unfortunately, "called party" is susceptible to multiple, reasonable interpretations. It could mean the cell phone subscriber or account holder—here, Breslow. It could mean the user of the cell phone—here, R.B. It could mean the actual recipient of the phone call—here, also

R.B.[7]  Or, it could mean the intended recipient of the phone call—here, the former customer.[8]  In short, the term "called party" is not self-defining, and plain meaning alone is insufficient to guide our interpretation.

Finding the term itself ambiguous, we look to the broader context of § 227 to determine whether one potential meaning of "called party" is especially compelling.  Cf. Koons Buick Pontiac GMC, Inc. v. Nigh, 543 U.S. 50, 60, 125 S. Ct. 460, 467, 160 L. Ed. 2d 389 (2004) ("A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme . . . ." (citation omitted)).  The term "called party" is found seven times in 47 U.S.C. § 227, but it is used in seemingly different ways.  The term appears twice in § 227(b)(1)(A): once in the context of the individual who consents to the call (the provision at issue

---

[7] In most cases, as was the case here, the recipient of a call to a cell phone and actual recipient of a call will be the same person. See Soppet v. Enhanced Recovery Co., 679 F.3d 637, 640 (7th Cir. 2012) ("For cell service, the subscriber and the person who answers almost always are the same, given the norm that one person does not answer another's cell phone."). However, one can imagine a situation in which the actual recipient of the call will differ from the primary user of the cell phone.

[8] This definition, however, comports the least with how we use the term "called" in the context of the telephone. Suppose an individual intends to call a friend in the morning to arrange a meeting for that afternoon, but accidentally dials the wrong number. The caller could not reasonably be upset if the friend does not attend the meeting, because the friend never received the call. And, upon calling the friend's correct number, the individual would not be able to say that he called the friend earlier. He would say that he meant to call the friend, but instead he called the wrong number. That is, the called party for the earlier call would be the unintended, but actual, recipient of the call.

6

here)[9] and once in the context of the party charged for the call.[10]  The latter use suggests that called party means the subscriber—i.e., the one responsible for paying the bill for cell phone service— because he or she would be the one charged for a call.  Because we often presume "a word [or phrase] is used consistently throughout a statute," Day v. Persels & Assocs., LLC, 729 F.3d 1309, 1319 (11th Cir. 2013), we might conclude that "called party" in the express consent provision similarly means the subscriber.  See Soppet v. Enhanced Recovery Co., 679 F.3d 637, 639 (7th Cir. 2012) (so concluding).

However, § 227(d)(3),which directs the FCC to prescribe technical and procedural standards for artificial or prerecorded voice messages via telephone, uses the term "called party" in a manner that undermines the conclusion that the term means always subscriber.  Section 227(d)(3)(B) requires that "any such [artificial or prerecorded voice message] system will automatically release the called party's line within 5 seconds of the time notification is transmitted to the system that the called party has hung up, to allow the called party's line to be used to make or receive other calls."  47 U.S.C. § 227(d)(3)(B) (emphasis added).  Were

---

[9] See 47 U.S.C. § 227(b)(1)(A) (prohibiting calls "other than a call . . . made with the prior express consent of the called party" (emphasis added)).

[10] See id. § 227(b)(1)(A)(iii) (prohibiting calls "to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call" (emphasis added)).

we to determine that called party always means subscriber, the second use of the term "called party" in § 227(d)(3) would not make sense because a situation could arise in which the subscriber is not the one answering—and thereby hanging up—the cell phone. Indeed, such a situation occurred in this case: R.B.—not the subscriber, Breslow—hung up the cell phone.[11]

Looking beyond the instances in which the phrase "called party" appears in the statute, the private right of action provision of § 227 lends further support to the proposition that "called party" should not be interpreted to mean intended recipient. As discussed in note 4, supra, the TCPA creates a private right of action against callers who violate the prohibition on autodialing. 47 U.S.C. § 227(b)(3). Under this provision, a defendant is potentially liable for one of two statutory penalties. The first is a $500 penalty for each instance in which the caller violates the prohibition. Id. § 227(b)(3)(B). This penalty does not require that the caller acted with a specific mens rea, it applies to any violation. If, however, the caller "willfully or knowingly" violates § 227, a court may award a plaintiff up to three times the amount available under § 227(b)(3)(B). Id. § 227(b)(3). In this penalty scheme, we see that the courts are directed to consider the caller's intent in the

---

[11] However, if one assumes the subscriber and the user are typically the same individual—as appears to have been Congress's assumption in 1991, see infra part I.B.—the apparent inconsistency is alleviated.

8

assessment of <u>damages</u>, not in the determination of liability.  It seems incongruous to conclude that Congress would create what appears to be a $500 strict-liability penalty for a violation if the plaintiff is required to prove that the caller acted with some level of fault.  Instead, Congress appears to have placed the burden on callers to ensure they do not violate § 227.  Thus, this enforcement scheme suggests that "called party" cannot properly be understood to mean the intended recipient of the call.

We have often stated that "[w]e begin our construction of [a statute] where courts should always begin the process of legislative interpretation, and where they often should end it as well, which is with the words of the statutory provision." <u>Harris v. Garner</u>, 216 F.3d 970, 972 (11th Cir. 2000).  But where, as here, the words of the statute provide incomplete guidance, we look to legislative history.

B.

"When faced with various suggested interpretations of a statute, it is appropriate for a court to look to legislative history as a guide to its meaning." <u>Cont'l Can Co., Inc. v. Mellon</u>, 825 F.2d 308, 310 (11th Cir. 1987); <u>see also</u> <u>Garcia v. Vanguard Car Rental USA, Inc.</u>, 540 F.3d 1242, 1247 (11th Cir. 2008) ("We may consult legislative history to elucidate a statute's ambiguous or vague terms . . . .").  In looking to legislative history, our aim is to discern Congress's intent at the time it enacted the TCPA.  <u>See</u> <u>Chavis v. Clayton Cnty. Sch. Dist.</u>, 300 F.3d

1288, 1292 (11th Cir. 2002) (explaining that in interpreting a statute "we have also taken 'cognizance of the events and passions of the time at which it was enacted'" (quoting District of Columbia v. Carter, 409 U.S. 418, 425, 93 S. Ct. 602, 606, 34 L. Ed. 2d 613 (1973)).

Section 227 was enacted in 1991 as part of the TCPA. Pub. L. No. 102-243, § 3, 105 Stat. 2394, 2395. Unsurprisingly, the reports and congressional debate accompanying the TCPA do not devote significant attention to the issue of autodialing cell phones. Instead, Congress focused primarily on the problem of telemarketers disrupting family dinners by calling residential telephones. See, e.g., 137 Cong. Rec. 35,304 (1991) (statement of Rep. Cooper) ("I rise in support of this legislation because it effectively addresses the nightly assault by telemarketing machines and operators on the privacy of our homes."); id. at 35,302 (statement of Rep. Markey) ("In the final analysis a person's home is his castle. Preservation of the tranquility and privacy of that castle should compel us to avail consumers of the opportunity to place the telephone line into their home, the sanctuary from which they escape all the other trials that society and Congress cause them, off limits to intrusive and annoying interruptions.").

Congress found that"[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy" and that "[m]any consumers are outraged over the proliferation of intrusive, nuisance calls." TCPA § 2, 105 Stat. at 2394; see also,

10

e.g., S. Rep. No. 102-178, at 2 (1991), reprinted in 1991 U.S.C.C.A.N. 1968, 1969 (stating that automated telephone calls "are a nuisance and an invasion of privacy"). Therefore, Congress sought to balance "[i]ndividuals' privacy rights, public safety interests," against "commercial freedoms of speech and trade." TCPA § 2, 105 Stat. at 2394; see also H.R. Rep. No. 102-317, at 10 (1991) ("The preponderance of the evidence documents the existence of a national problem and argues persuasively in favor of federal intervention balancing the privacy rights of the individual and the commercial speech rights of the telemarketer."); 137 Cong. Rec. 35,304 (1991) (statement of Rep. Lent) ("The bill before the House today reflects a further effort to address problems in the telemarketing industry, while accommodating legitimate concerns of telemarketers that their industry not be unfairly stifled."). Congress focused on the problem of autodialing, rather than live telemarketers, because of the ease with which a company can abuse the technology. Id. ("At least you can vent your anger to a real person if they have interrupted your dinner. You can ask them questions and hold them accountable to some extent. At least a live person can only call one person at a time.").

The phrase "called party" appears sporadically in the legislative history, but as with the text of the statute itself, it does so in seemingly different ways. For example, the Senate Report noted that "unsolicited calls placed to . . . cellular or paging telephone numbers often impose a cost on the called party" because

11

"cellular users must pay for each incoming call."  S. Rep. No. 102-178, at 2, reprinted in 1991 U.S.C.C.A.N. at 1969.  This use suggests called party means the one who pays for the call—i.e., the subscriber

In another section of the same report, however, the Senate used the term "called party" in a way that suggests "called party" means the person who answers the phone.  While Congress debated the TCPA, telemarketers had sought an exemption for certain automated calls, such as calls made to a customer to inform them a product was available for pick up and calls made for debt collection. Congress declined to include such exemptions because "such automated calls only should be permitted if the called party gives his or her consent to the use of these machines."  Id. at 3, reprinted in 1991 U.S.C.C.A.N. at 1971.  In this section of the Senate Report, "called party" appears to more closely mean the person who will answer the telephone.  That is, the person consenting in each situation would be either the customer who placed the order or the debtor.

The most telling portion of the Senate Report comes from the Regulatory Impact Statement, which states, "The bill prohibits telemarketers from using artificial or prerecorded voice messages to residential consumers without the prior express consent of the recipient of the call."  Id. at 8, reprinted in 1991 U.S.C.C.A.N. at 1976.  Although the language speaks of residential, not cell phone, consumers, the express consent exception for residential consumers is

12

worded identically to the cell phone exemption, compare 47 U.S.C. § 227(b)(1)(A) with 47 U.S.C. § 227(b)(1)(B), which may suggest "called party" in both provisions means the recipient of the call.

The House Report accompanying the TCPA explains that "[t]he Bill also requires that as soon as technically practicable after the called party hangs up, such [automatic dialing] machines automatically create a disconnect signal or on-hook condition that allows the called party's line to be released." H.R. Rep. No. 102-317, at 22. This suggests that "called party" means the recipient; no other definition would make sense. That is, the autodial system must release the recipient's phone; the intended recipient's phone line is already open. During the House debate on the Senate version of the bill, one of the original House bill's co-sponsors confirmed this interpretation, remarking that the TCPA "contains a provision requiring computer-generated calls to disconnect as soon as the receiver seeks to terminate the message." 137 Cong. Rec. 35,306 (1991) (statement of Rep. Roukema).

Although the legislative history provides some clarification as to the meaning of the term "called party," no definitive definition reveals itself in the debates or congressional reports. Congress's use of the term "called party" and its explanations of the provisions of the TCPA that include the term suggest that

13

"called party" means either the subscriber or the user of the phone called.[12]  The legislative history lends no support for Wells Fargo's position that "called party" means intended recipient.

## II.

The Seventh Circuit is the only other circuit to have previously addressed the question presented by this appeal.  In Soppet v. Enhanced Recovery Co., 679 F.3d 637 (7th Cir. 2012), the court concluded that "called party in § 227(b)(1) means the person subscribing to the called number at the time the call is made." Id. at 643 (internal quotation marks omitted).  Looking first to the text of § 227, the court concluded that four of the references to called party "unmistakably denote the current subscriber . . . one denotes whoever answers the call . . . and the others (the two that deal with consent) have a referent that cannot be pinned down by context."  Id. at 640.  Based on the presumption that the words in a statute are used consistently and an assumption that "[f]or cell service, the subscriber and the person who answers almost always are the same," id., the court concluded "called party" must mean subscriber.  Id. at 643.  It rejected the notion that "called party"

---

[12] It appears that in 1991 Congress presumed the cell phone subscriber and the user would be the same person in almost every case.  And it may be the case that such an assumption is no longer valid in light of current cell phone use practices.  See infra note 13.  Whether that assumption is appropriate in light of current trends is a question for Congress, not this court.

means "intended recipient," concluding that such an argument "does not rest on . . . a linguistic analysis of § 227." Id. at 641.

The Court of Appeals rejected an argument that consent remained effective until the new person who is assigned the cell phone number revokes it, reasoning that "there can't be any long-term consent to call a given Cell Number because no one . . . has a property right in a phone number." Id. at 640–41. The court also rejected a policy argument similar to the one Wells Fargo makes here: the manner in which the public utilizes cell phones has changed,[13] thus making the use of autodialing systems more risky and driving up the cost of doing business. The Seventh Circuit noted—and we agree—that although the TCPA may not comport with current cell phone trends, it is not for the courts to make "substantive changes designed to make the law 'better.'" Id. at 642. "Nor should a court try to keep a statute up to date. Legislation means today what it meant when enacted." Id.; see also Nat'l Broiler Mktg. Ass'n v. United States, 436 U.S. 816, 827, 98 S. Ct. 2122, 2130, 56 L. Ed. 2d 728 (1978) ("[A] statute 'is not an empty vessel into which this Court is free to pour a vintage that we think better suits present-day tastes.' Considerations of this kind are for the Congress, not the courts." (quoting United

---

[13] Wells Fargo cites the proliferation of businesses paying for their employees' cell phone plans, individual families purchasing joint family plans, and individuals using cell phones instead of residential telephone lines, and individuals sharing a single cell phone.

15

States v. Sisson, 399 U.S. 267, 297, 90 S. Ct. 2117, 2133, 26 L. Ed. 2d 608 (1970))).

The Seventh Circuit's well-reasoned opinion provides further support for our conclusion that "called party," for purposes of § 227(b)(1)(A), means the subscriber or user of the cell phone.

## III.

Rather than rely on Soppet, which directly addressed the question presented here, Wells Fargo would have us rely on our unpublished decision in Meadows v. Franklin Collection Serv., Inc., 414 F. App'x 230 (2011), to find that "called party" means intended recipient.[14] In Meadows, a debt-collection service made automated telephone calls to a woman's residential telephone number. Id. at 232. The woman did not owe any of the debts, they were instead owed by her daughter and the family that had previously owned the phone number. Id. The woman sued under 47 U.S.C. § 227(b)(1)(B), which concerns residential telephone lines and is substantially similar to the cell phone provision in § 227(b)(1)(A). Id. at 235. Section 227(b)(1)(B) includes an additional provision, however, which authorizes

---

[14] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

the FCC to develop exceptions to the prohibition on autodialing <u>residential</u> lines. 47 U.S.C. § 227(b)(1)(B).

Pursuant to this authority, the FCC created an "established business relationship" exception, which applies to any call made "[t]o any person with whom the caller has an established business relationship." 47 C.F.R. § 64.1200(a)(2)(iv) (2012). The exemption does not contain the phrase "called party." In <u>Meadows</u>, we held that "because [the caller] had an existing business relationship with the intended recipient of its prerecorded calls . . . those calls are exempt from the TCPA's prohibitions of prerecorded calls to residences." Fed. App'x at 235. We reasoned that "[o]therwise, a debt collector that used a prerecorded message would violate the TCPA if it called the debtor's number and another member of the debtor's family answered." <u>Id.</u>

Seizing on the language in <u>Meadows</u>, Wells Fargo argues that we should interpret the "prior express consent" language of § 227(b)(1)(A) to also apply to the intended recipient. According to Wells Fargo, such a reading makes sense because, like a call made to a residential phone number, a caller cannot be expected to know who will answer a cell phone call. Of course, <u>Meadows</u> did not purport to define the term "called party," but Wells Fargo contends its reasoning applies just the same. We decline to follow Wells Fargo down this road.

17

Although the FCC has issued a declaratory ruling stating that "the provision of a cell phone number to a creditor, e.g., as part of a credit application, reasonably evidences prior express consent by the cell phone subscriber to be contacted at that number regarding the debt," In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 23 FCC Rec. 559, 564 (2008), it does not follow that the consumer's consent means that the creditor may continue to call the number after the number is no longer being used by the consumer. As the FCC decision makes clear, "the creditor should be responsible for demonstrating that the consumer provided prior express consent. . . . Should a question arise as to whether express consent was provided, the burden will be on the creditor to show it obtained the necessary prior express consent." Id. at 565. At bottom, the FCC recognized that debt collectors are in a better position to determine whether a party's consent is still valid. That is, a person who is assigned a cell phone number, such as Breslow, has no way to know if a prior user of that number, such as Wells Fargo's former customer, has consented to being contacted via autodial system. Because the FCC places the burden of proving consent exists on the creditor (i.e., the caller), we believe that burden should remain on the caller to ensure the consent remains valid.

18

In short, <u>Meadows</u> does not support Wells Fargo's argument that "called party" means intended recipient.[15]

## IV.

The District Court's grant of partial summary judgment is, accordingly, AFFIRMED.

---

[15] We recognize that requiring Wells Fargo to confirm that the consent it previously obtained is still valid imposes certain burdens. Wells Fargo remains free to use live telemarketers, who can confirm that the customer is still using the cell phone number he or she provided. Of course, even if Wells Fargo confirms that the consent remains valid, that confirmation is good only for that moment in time. There is no guarantee that the customer will continue to use the cell phone. Indeed, a bank customer who owes a debt may decide to get rid of the cell phone after receiving the first debt-collection call in an effort to avoid paying the debt.

These burdens, however, are a product of the most reasonable interpretation of the term "called party," considering the text, structure, and legislative history of the TCPA. "We take the provision as Congress wrote it, and neither add words to nor subtract them from it." <u>Korman v. HBC Fla., Inc.</u>, 182 F.3d 1291, 1296 (11th Cir. 1999); <u>see also</u> <u>Harris v. Garner</u>, 216 F.3d 970, 976 (11th Cir. 2000) ("[T]he role of the judicial branch is to apply statutory language, not to rewrite it.").