

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-4-2007

# Walzer v. Muriel Siebert Co

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-3680

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Walzer v. Muriel Siebert Co" (2007). *2007 Decisions.* Paper 1358.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1358

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 05-3680, 05-4698, 05-5215, & 05-5490
_____


ANDREW WALZER,

v.

MURIEL, SIEBERT & CO., INC.;
NATIONAL FINANCIAL SERVICES, LLC;
GERARD KOSKE; RONALD BONO; MURIEL SIEBERT

_____

On Appeal From the United States District Court
For the District of New Jersey
(D.C. Civ. No. 04-cv-05672)
District Judge: Honorable Dickinson R. Debevoise

_____


Submitted Under Third Circuit LAR 34.1(a)
April 3, 2007

Before: FISHER, ALDISERT AND WEIS, <u>CIRCUIT JUDGES</u>

(Filed: April 4, 2007)


_____

OPINION
_____

PER CURIAM

Andrew Walzer appeals from the District Court's order granting the Defendants'

motion to dismiss. For the reasons that follow, we will affirm in part and vacate in part.

Walzer opened a personal brokerage account with Muriel Siebert, Co. ("Siebert"), a New Jersey a brokerage firm, in 1980, and continued investing with Siebert for 20 years. In 1982, Walzer signed an options agreement with Siebert giving him margin privileges, and, at least since 1996, Walzer purchased securities on margin through this account. In 2002, Siebert notified Walzer that he must increase the percentage of equity maintained in his account. As a result, Walzer faced numerous margin calls and requests from Siebert to deposit cash in his account to avoid a forced sale of his securities.

Walzer claimed that the percentage equity in his account was sufficient under the New York Stock Exchange ("NYSE") and Federal Reserve requirements and refused to deposit additional cash. Siebert claimed that, under Walzer's most recent option agreement, Siebert was allowed to raise his equity requirements above the NYSE minimums. Walzer requested a copy of the agreement and eventually was provided with an agreement dated August 29, 1996. Eventually Siebert sold approximately $802,000 worth of securities in Walzer's account at a loss. Walzer claimed that the 1996 agreement was a forgery and that Siebert forced the sale of his securities because, due to the market downturn, the firm's finances were weak.

Walzer then commenced a suit in the New York State Supreme Court against Siebert for breach of contract, fraud, and breach of fiduciary duty. Walzer claimed that Siebert had forged the 1996 agreement on which its authority to raise Walzer's equity

2

requirements rested. Siebert moved to compel arbitration under the 1996 agreement. In January 2005, the court granted Siebert's motion and stayed the case pending arbitration. Justice Walter Tolub of the New York Supreme Court found that, even if the 1996 agreement was a forgery, and thus void, Walzer's prior agreement from 1992 included an arbitration clause which mandated arbitration of his claims. Walzer appealed the order, but appears to have abandoned the appeal.

In November 2004, while his state suit was pending, Walzer filed this suit in the United States District Court for the District of New Jersey. In addition to Siebert, Walzer named as defendants Muriel Siebert, the CEO of Siebert & Co.; National Financial Services, LLC ("NFS"), the clearing broker which underwrote Siebert's margin investments, Gerard Koske; a compliance officer at Siebert who allegedly covered up the fact that the 1996 agreement was a forgery; and Ronald Bono, a vice president at Siebert who gave Walzer the 1996 agreement. In his complaint Walzer reiterated the state-law claims that he raised in his New York lawsuit and also claimed that Siebert violated the Securities and Exchange Act ("Exchange Act"), 15 U.S.C. § 78a et seq., and accompanying regulations, as well as NASD rules. The Defendants filed a motion to dismiss, claiming that the New York judgment compelling arbitration barred the federal action on the grounds of res judicata and collateral estoppel. The District Court granted the motion and dismissed the suit with prejudice as to the arbitration issue.

Walzer appealed.[1]

We have jurisdiction pursuant to 28 U.S.C. § 1291. Our review of the District Court's application of res judicata and collateral estoppel is plenary. See Venuto v. Witco Corp., 117 F.3d 754, 758 (3d Cir. 1997).[2] Although res judicata and collateral estoppel are affirmative defenses, they may be raised in a motion to dismiss under FED. R. CIV. P. 12(b)(6). See Connelly Found. v. Sch. Dist. of Haverford Twp., 461 F.2d 495, 496 (3d Cir. 1972).[3] For the purposes of reviewing a motion to dismiss, we accept as true all allegations of the complaint and all reasonable inferences that can be drawn

---

[1] Walzer also filed a motion for reconsideration, which was ruled on after he filed his notice of appeal. Walzer's appeal of the District Court's order denying his first motion for reconsideration, as well as his appeals of two subsequent motions have been consolidated with this case. Because his first motion for reconsideration was untimely, the District Court's order denying reconsideration, to the extent that it modified the original order, is a nullity. See Smith v. Evans, 853 F.2d 155, 159 (3d Cir. 1988).

[2] Walzer also appeals the District Court's decision to deny his motion for a default judgment. We review the order denying a default judgment for abuse of discretion. See Chamberlain v. Giampapa, 210 F.3d 154, 164 (3d Cir. 2000). With respect to the default judgment, a delay in responding does not necessarily require the entry of a default judgment. See Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1147-48 (3d Cir. 1990). Considering that NFS filed its response before Walzer filed his motion for a default judgment, and examining the factors in Poulis v. State Farm Fire and Cas. Co., 747 F.3d 863, 868 (3d Cir. 1984), we conclude that the District Court did not abuse its discretion.

[3] Other than Walzer's complaint and the documents attached thereto, the District Court only appears to have considered Justice Tolub's memorandum and order in deciding the motion. See Lum v. Bank of America, 361 F.3d 217, 222 (3d Cir. 2004)("To decide a motion to dismiss, a court generally should consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.").

therefrom.  See Taliaferro v. Darby Twp. Zoning Bd., 458 F.3d 181, 188 (3d Cir. 2006).

Under 28 U.S.C. § 1738, the rulings of state courts "shall have the same full faith and credit in every court within the United States . . . as they have by law or usage in the courts of such state . . . from which they are taken."  In determining the preclusive effect of a state court judgment, we apply the rendering state's law of res judicata and collateral estoppel.  See Marrese v. American Academy of Orthopaedic Surgeons, 470 U.S. 373, 380 (1985).  Thus, whether Walzer's suit is precluded turns on the law of New York.

The purpose of res judicata is to avoid piecemeal litigation of claims arising from the same events.  See Bd. of Trs. of Trucking Employees of N. Jersey Welfare Fund, Inc. v. Centra, 983 F.2d 495, 504 (3d Cir. 1992).  "Under both New York law and federal law, the doctrine of res judicata, or claim preclusion provides that a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."  Maharaj v. Bankamerica Corp., 128 F.3d 94, 97 (2d Cir. 1997)(internal quotations omitted).  The doctrine of collateral estoppel, or issue preclusion, is a narrower species of res judicata; it bars "a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party."  Ryan v. N.Y. Tel. Co., 62 N.Y.2d 494, 500, 467 N.E.2d 487, 490 (1984).  Unlike the doctrine of claim preclusion, "collateral estoppel effect will only be given to matters 'actually litigated and determined' in a prior action."  Kaufman v. Eli Lilly & Co., 65 N.Y.2d 449, 456, 482 N.E.2d 63 (1985)(quoting Restatements

5

(Second) of Judgments § 27 (1982)).

Walzer's state claims are precluded by collateral estoppel against all of the defendants because the issue of their arbitrability was clearly raised and decided against him in state court. However, neither claim preclusion nor issue preclusion act as a bar to his federal claims.

Issue preclusion is no bar to Walzer's federal claims because their arbitrability under the 1992 agreement was never actually litigated in the New York proceeding. The only issue actually litigated in Walzer's state case was whether the 1992 agreement mandated arbitration of the fraud, breach of contract, and breach of fiduciary duty claims that he had brought.

The scope of the arbitration clause in Walzer's 1992 agreement with Siebert was not at issue in the state-court action; the issue there was whether the arbitration clause was valid. Justice Tolub based his ruling on the 1992 margin account application which stated "[t]his account is governed by a pre-dispute arbitration agreement which is enclosed. I acknowledge the receipt of the pre-arbitration clause." (JA at 189.) However, Siebert did not produce the 1992 arbitration clause in the New York case, and it is unclear what the enclosed arbitration agreement said. Siebert has only produced a 1994 form agreement that it claimed was identical in all material aspects to the 1992 agreement that controlled the outcome of the New York case. (See JA at 367.) Walzer disagreed, and claimed that the 1992 agreement's arbitration clause expressly exempted

6

federal claims.[4]  (Pl.'s Mot. to Withdraw as Pro Se at 3, 17, Docket entry No. 20.)
Accepting as true all allegations of the complaint and based on the records from the New York case, it appears that the issue of the arbitrability of Walzer's federal claims was not actually litigated and Walzer is not collaterally estopped by Justice Tolub's order from bringing these claims in federal court.

Nor is claim preclusion a bar to Walzer's federal claims in this action.  Under New York law, a prior judgment between the parties generally bars any subsequent cause of action arising out of the same occurrence or transaction.  See O'Brien v. City of Syracuse, 54 N.Y.2d 353, 357, 429 N.E.2d 1158 (1981).  However, the prior judgment will not act as res judicata if the current claim could not have been asserted in the previous action.  Yoon v. Fordham Univ. Faculty and Admin. Ret. Plan, 236 F.3d 196, 206 (2d Cir. 2001) (J. Kaplan concurring).  If the current claim is in the exclusive jurisdiction of the federal courts, then the New York state court would not have had jurisdiction to hear it and a judgment will not act as res judicata.  See Cullen v. Margiotta, 811 F.2d 698, 732 (2d Cir. 1987) (holding RICO claim was not barred by prior New York judgment), overruled on other grounds, Agency Holding Corp. v.

---

[4]Siebert claimed that, in the New York litigation, Walzer stipulated that the 1992 and 1994 arbitration clauses were identical, but Walzer disagreed and the stipulation does not appear in the record.  (JA at 374.)  Further, Walzer produced a 1991 agreement with Siebert from a separate account with an arbitration clause that exempted federal claims, which he said is identical to the 1992 agreement.  (Pl. Mot. to Withdraw as Pro Se at 17.)

Malley-Duff & Assocs., Inc., 483 U.S. 143 (1987); see also RX Data Corp. v. Dept. of Social Servs., 684 F.2d 192, 198 (2d Cir. 1982)(finding that copyright infringement claim was not barred by previous litigation in New York state courts because copyright infringement claims are within the exclusive jurisdiction of the federal courts).

Under 15 U.S.C. § 78aa, jurisdiction to entertain suits under the Exchange Act rests solely in the federal courts. See Matsushita Elec. Indus. Co. v. Epstein, 516 U.S. 367, 370 (1996). Accordingly, Walzer could not have brought his Exchange Act claims in his previous action. See id. Thus, the New York state courts would not accord the judgment preclusive effect, and neither should the District Court. Because the New York judgment does not act as res judicata with regard to the Exchange Act claims, the issue becomes whether arbitration of the federal claims is mandated by the 1992 agreement.[5]

For the foregoing reasons, the District Court erred in granting the Defendants' motion to dismiss. Although we agree with the District Court that Walzer's state claims are barred by the New York judgment compelling arbitration, we disagree regarding whether the New York judgment mandates arbitration of his Exchange Act claims.

---

[5]Regarding the District Court's denial of Walzer's motion to withdraw as pro se and adjourn in order to obtain counsel and amend his complaint, we find no error. Should Walzer wish to amend his complaint, he may as of right because the Defendants have yet to file a responsive pleading. See Centifanti v. Nix, 865 F.2d 1422, 1431 n. 9 (3d Cir. 1989)("[N]either a motion to dismiss, nor a motion for summary judgment, constitutes a responsive pleading under FED. R. CIV. P. 15(a).")

8

Accordingly, the District Court's judgment will be affirmed in part and vacated in part.[6]

We will remand for further proceedings.

---

[6]During the pendency of this appeal, Walzer filed numerous motions with this Court to amend his appendix and extend time for filing briefs.  These motions are denied.