**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-4526
_____

ANDREW WALZER,
                           Appellant

v.

MURIEL SIEBERT & CO.; NATIONAL FINANCIAL SERVICES LLC;
GERARD KOSKE; RONALD BONO; MURIEL SIEBERT
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 04-cv-05672)
District Judge:  Honorable Dickinson R. Debevoise
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 27, 2011

Before: SCIRICA, SMITH and VANASKIE, <u>Circuit</u> <u>Judges</u>

(Opinion filed: October 6, 2011 )

_____

OPINION
_____

PER CURIAM

        Andrew Walzer appeals pro se from the District Court's orders dismissing his

complaint and declining to reconsider that ruling.  We will affirm.

I.

The parties are familiar with the background of this case, which we partially summarized in Walzer v. Muriel Siebert & Co., 221 F. App'x 153 (3d Cir. 2007). Briefly, Walzer opened a personal brokerage account with Muriel Siebert & Co. ("MSC") in 1980. He later entered into an options agreement with MSC permitting him to buy securities on margin. In 2002, MSC decided to require Walzer to increase the percentage of equity in his account (generally referred to as a margin or maintenance requirement). Walzer objected that the existing equity was sufficient under New York Stock Exchange and Federal Reserve requirements. MSC responded by claiming the right to require additional equity under a 1996 options agreement between the parties.[1]

Walzer did not deposit funds to cover the increased margin requirement. He faced numerous margin calls as a result, and MSC sold approximately $802,000 worth of his securities from July 2002 through October 2002 when Walzer failed to meet them. Walzer alleges that the sales occurred during unfavorable market conditions and resulted in a substantial loss. After MSC completed the sales, it provided Walzer with a copy of the 1996 agreement under which it claimed the right to increase his margin requirement. Walzer claims that the document is forged.

---

[1] Though we need not and do not resolve that factual issue, we have observed that "[m]ost brokers by contract fix higher maintenance requirements for their own protection." Walck v. Am. Stock Exch., Inc., 687 F.2d 778, 780 n.2 (3d Cir. 1982). Such contracts generally permit brokers to issue margin calls when the funds in a customer's account fall below the margin requirement and then sell the customer's securities if the customer fails to deposit sufficient funds. See id.

In 2003, Walzer filed suit against MSC in New York state court, asserting claims for breach of contract, breach of fiduciary duty, and fraud. MSC moved to compel arbitration under an arbitration clause contained in the 1996 agreement. In January 2005, the New York state court granted the motion on the basis of an undisputedly authentic 1992 agreement that also contained an arbitration clause and then stayed the action pending arbitration before the Financial Industry Regulatory Authority ("FINRA").

Shortly before that ruling, Walzer filed pro se the federal suit at issue here. He asserted his state-law claims as well as the federal securities fraud claims discussed below. As defendants, Walzer named MSC; its CEO Muriel Siebert; its clearance broker National Financial Services, LLC ("NFS"); Ronald Bono, an MSC vice president who provided Walzer with a copy of the 1996 agreement; and Gerald Koske, an MSC compliance officer who allegedly concealed the purported forgery.

Defendants filed motions to stay or dismiss the federal action, arguing in relevant part that the complaint was barred by res judicata because the New York state court already had decided that Walzer's claims are subject to arbitration. The District Court granted the motions under Rule 12(b)(6), and Walzer appealed. We affirmed as to Walzer's state-law claims but remanded for further proceedings on his federal claims. See Walzer, 221 F. App'x at 156-57. As we explained, the New York state court determined only that the 1992 arbitration clause was valid and compelled arbitration of Walzer's state-law claims. See id. Thus, we remanded for further proceedings on Walzer's federal claims, though we did not require any proceedings in particular. See id.

3

at 157.

On remand, defendants moved to stay the federal action pending the FINRA arbitration. Walzer sought discovery on the 1992 arbitration clause in order to respond. A Magistrate Judge denied his request by order entered July 25, 2008 (Docket No. 162), and then granted defendants' motions and stayed the action pending arbitration by order entered December 31, 2008 (Docket No. 179). Walzer filed a motion for reconsideration of that order, but the Magistrate Judge dismissed it without prejudice on March 17, 2009 (Docket No. 182), because Walzer failed to comply with the District Court's previous order of January 17, 2006, which required him to seek leave before filing such motions. Walzer did not seek further review by the District Court.

The FINRA arbitration was resolved in MSC's favor on December 29, 2009. Defendants sought permission to lift the stay of the federal action and file appropriate motions, which the Magistrate Judge granted them leave to do by order entered April 9, 2010 (Docket No. 203). Defendants then filed motions to confirm the arbitration award and dismiss Walzer's federal claims on numerous grounds, including failure to state a claim. By opinion and order entered August 10, 2010 (Docket Nos. 228 & 229), the District Court denied defendants' motions to confirm the arbitration award but granted their motions to dismiss Walzer's federal counts for failure to state a claim. Walzer filed a motion for reconsideration, which the District Court denied by opinion and order entered October 28, 2010 (Docket Nos. 236 & 237). Walzer filed a notice of appeal, along with another motion for reconsideration. The District Court denied that motion by

4

order entered December 17, 2010 (Docket No. 244), and Walzer amended his notice of appeal to include that ruling. A New York state court has since confirmed the FINRA arbitration award, but Walzer asserts that he has appealed that decision and it has no bearing on our disposition of the issues on appeal.

## II.

Walzer challenges seven orders on appeal: (1) the Magistrate Judge's July 25, 2008 order denying his request for discovery on the 1992 arbitration clause (Docket No. 162); (2) the Magistrate Judge's December 31, 2008 order staying the federal action pending the FINRA arbitration (Docket No. 179); (3) the Magistrate Judge's March 17, 2009 order dismissing his motion for reconsideration of the previous order (Docket No. 182); (4) the Magistrate Judge's April 9, 2010 order permitting defendants to file their motions to dismiss (Docket No. 203); (5) the District Court's August 10, 2010 order dismissing Walzer's complaint (Docket No. 229); (6) the District Court's October 28, 2010 order denying Walzer's motion for reconsideration (Docket No. 237); and (7) the District Court's December 17, 2010 order denying his second motion for reconsideration (Docket No. 244). Because most of the issues he raises relate to numerous orders, we will address the underlying issues rather than the particular orders seriatim.[2]

---

[2] We have jurisdiction under 28 U.S.C. § 1291. We review the District Court's dismissal under Rule 12(b)(6) de novo. See Barefoot Architect, Inc. v. Bunge, 632 F.3d 822, 826 (3d Cir. 2011). "To withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Id. (citations and internal quotation marks omitted). A claim is plausible if such factual matter permits "'the reasonable inference that the defendant is

5

A.    The Merits of Walzer's Claims and Leave to Amend

Walzer devotes most of his brief to arguments unrelated to the merits of his claims, but we begin by addressing that issue. Walzer's primary claim is that defendants violated Section 10(b) of the Securities and Exchange Act ("Exchange Act"), 15 U.S.C. § 78j(b), and Securities and Exchange Commission ("SEC") Rule 10b-5, 17 C.F.R. § 240.10b-5. In general terms, the statute and rule prohibit material misrepresentations or omissions in connection with the purchase or sale of securities. See Matrixx Initiatives, 131 S. Ct. at 1317; McCabe v. Ernst & Young, LLP, 494 F.3d 418, 424 (3d Cir. 2007). A private cause of action under Section 10(b) has six elements, including reliance on the misrepresentation or omission. See Matrixx Initiatives, 131 S. Ct. at 1317; McCabe, 494 F.3d at 424. That element required Walzer to "plead that he . . . reasonably and justifiably relied on an alleged misrepresentation. This burden requires a plaintiff to demonstrate that defendants' conduct caused him to engage in the transaction in

_____

liable for the misconduct alleged[.]'" Matrixx Initiatives, Inc. v. Siracusano, 131 S. Ct. 1309, 1323 (2011) (citation omitted). Walzer's securities fraud claims also are subject to the heightened pleading requirements of the Private Securities Litigation Reform Act, see id. at 1318 n.4, 1324, though our disposition does not require us to apply them. We review for abuse of discretion matters of discovery and docket control, see In re Fine Paper Antitrust Litig., 685 F.2d 810, 817 (3d Cir. 1982), and the District Court's decision to dismiss a complaint without leave to amend, which is proper when amendment would be inequitable or futile, see In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1434 (3d Cir. 1997). We review the denial of reconsideration for abuse of discretion as well, though we review underlying issues of law de novo. See Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros, 176 F.3d 669, 673 (3d Cir. 1999). Walzer's appeal from the denial of reconsideration brings up for review the underlying dismissal of his complaint. See Jones v. Pittsburgh Nat'l Corp., 899 F.2d 1350, 1352 (3d Cir. 1990).

question." Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 259 F.3d 154, 174 (3d Cir. 2001) (internal citations and quotations marks omitted).

Walzer alleges that MSC sold securities in his account after improperly raising his margin requirement pursuant to the 1996 agreement, which he contends is forged. In its opinion of August 10, 2010, the District Court treated MSC's presentation of the 1996 agreement as the alleged misrepresentation. It held that Walzer had not pleaded reliance on that representation because he alleged that MSC did not provide him with a copy of the 1996 agreement until after the sales at issue were complete. (Docket No. 228 at 16.) It further concluded that Walzer expressly alleged that he did not rely on the representation because he contested MSC's authority to make the sales. (Id.) Finally, it concluded that Walzer did not plead reliance because he alleged that it was MSC that sold the securities at issue and that it did so without his consent. (Id.) In sum, the District Court concluded that Walzer had pleaded nothing more than a claim for breach of contract, which we already had decided was subject to arbitration pursuant to the New York state judgment. (Id.)[3]

Walzer argues that the District Court misread his complaint and drew inferences against him. (Appellant's Br. at 19-24.) He asserts that the actionable misrepresentation

---

[3] Neither the District Court nor the parties cited any authority addressing a similar claim. We have located one decision. The plaintiff in that case, like Walzer, sued his brokerage firm for raising his margin requirement and then selling his securities to meet a margin call. See Conway v. Icahn & Co., 16 F.3d 504, 506-08 (2d Cir. 1994). The plaintiff asserted a claim under Section 10(b) of the Exchange Act, but the case ultimately was submitted to a jury only on state-law claims, including breach of contract. See id. at 508.

was not the allegedly forged 1996 agreement, which he concedes MSC provided him after its sales were complete, but MSC's representations while it was making those sales that the agreement permitted it to do so. He also asserts that his complaint should not be read to allege that he affirmatively objected to MSC's actions.

The second of these assertions is belied by the complaint itself. See Compl. (Docket No. 1) at 6 ¶ 16(f) ("I/plaintiff also several times called . . . NFS, to complain of improper margin calls"). Even if both were the case, however, the point remains that Walzer alleges nothing suggesting that he personally sold securities in reliance on any representation by MSC. To the contrary, Walzer repeatedly alleges that it was MSC, and not he, who decided to sell securities from his account to cover the allegedly improper margin calls. See, e.g., id. at 4 ¶ 15 (referring to defendants' "forced sales" and "forced margin selling"), 5 ¶ 16(b) ("The Defendant forced sales of various Plaintiff's securities . . . by issuing these improper margin calls, then doing certain margin sell-outs"), 6 ¶ 16(d) (defendants "took control of Plaintiff's Account and forced sales"), 7 ¶ 16(g) ("Defendant . . . continued to force more sales of plaintiff's securities without consent"). Thus, we agree with the District Court that Walzer did not plead reliance. Cf. Angelastro v. Prudential-Bache Sec., Inc., 764 F.2d 939, 944-45 (3d Cir. 1985) (holding that plaintiff stated a Section 10(b) claim by alleging that her broker's misstatements concerning her margin account interest rate induced her to buy securities on margin).

Walzer also argues that the District Court should have permitted him to amend his

---

The court did not specify why the plaintiff's federal claim was not submitted to the jury.

8

complaint. He filed a motion for leave to amend after defendants filed their motions to dismiss, but he did not seek leave to include anything relevant to reliance and instead sought only to drop NFS as a defendant for lack of scienter and to assert a claim for "mail fraud." (Docket No. 216 at 1-2.) He first advanced an alternate theory of reliance in the District Court in his motion for reconsideration, but the District Court rejected it and Walzer has not pressed it on appeal.[4]

Instead, he now advances a third theory. According to Walzer, he can amend his complaint to plead reliance because (contrary to the allegations in his existing complaint) MSC allowed him to choose which securities it would sell in twenty-two of the twenty-four transactions at issue. (Appellant's Br. at 26-28.) Walzer did not present this theory to the District Court. Even if it were properly before us, it still does not allege reliance because Walzer does not assert that MSC's alleged representations led him to choose certain securities rather than others. Newton, 259 F.3d at 174. We are thus satisfied that any amendment of this claim would be futile.[5]

Walzer asserted three other federal claims in the District Court but raises only two

_____

[4] Walzer argued that he "collaterally relied" on the allegedly forged agreement because MSC used it to induce NFS to execute the sale of his securities. The District Court rejected this argument because it still did not assert that Walzer himself relied on MSC's alleged representations. (Docket No. 236 at 16-18 & n.3.)

[5] The District Court also determined that leave to amend this claim would be inequitable: "While [pro se] status entitles Mr. Walzer to some amount of indulgence, it does not grant him unlimited license to change the theories on which his claims rest in order to circumvent earlier judgments of the Court—especially after six years of protracted litigation." (Docket No. 236 at 17.) We agree with this conclusion as well.

of them on appeal. First, Walzer claims that MSC violated Section 10(b) of the Exchange Act and SEC Rule 10b-16 by failing to provide him with a disclosure statement when he first entered into an options agreement in 1982. The District Court held that this claim is barred by the Exchange Act statute of limitations, which is the earlier of five years after the alleged violation or two years after its discovery. (Docket No. 228 at 14 n.5) (citing 28 U.S.C. § 1658(b)). Walzer concedes that the claim as asserted in his complaint is untimely, but argues that he can amend it to allege a lack of disclosures in connection with his "1990s" agreements (apparently in 1992 and 1996). (Appellant's Br. at 54-55.) Walzer did not present this theory to the District Court and, as defendants argue, this claim remains untimely in any event.

Second, Walzer claims that MSC violated Section 8 of the Exchange Act and SEC Rule 8c-1 by hypothecating his securities without his consent. As the District Court explained, however, Walzer alleges that MSC sold his securities, not that it hypothecated them. See Black's Law Dictionary 811 (9th ed. 2009) (defining "hypothecate" as "[t]o pledge (property) as security or collateral for a debt, without delivery of title or possession"). Walzer argues that MSC effectively treated his securities as collateral for his own margin loans and once again seeks leave to replead (Appellant's Br. at 42-44), but the fact remains that MSC's sale of those securities is not a hypothecation.[6]

---

[6] The claim that Walzer has not pressed on appeal is that defendants violated Section 17(a) of the Exchange Act and associated rules by failing to provide a copy of his options agreement on request. The District Court dismissed this claim because the statute and rules do not provide for a private cause of action. (Docket No. 228 at 17) (citing Touche

In sum, the District Court properly concluded that Walzer failed to state a federal claim and did not abuse its discretion in dismissing his complaint without leave to amend or in declining to reconsider the merits of that ruling.

### B.    Walzer's Remaining Arguments

Each of Walzer's remaining arguments lacks merit.  Walzer argues throughout his brief that we remanded in order for the District Court to determine the arbitrability of his federal claims under the 1992 arbitration clause.  Thus, according to Walzer, our mandate precluded the District Court both from staying proceedings pending the FINRA arbitration and from entertaining defendants' motion to dismiss, and required the court instead to permit discovery on the 1992 agreement.[7]

We disagree.  In our previous opinion, we held only that Walzer's federal claims are not barred by the New York state court's ruling that his state-court claims are subject to arbitration.  See Walzer, 221 F. App'x at 157.  We noted that the 1992 arbitration clause was not of record and that whether it encompassed his federal claims remained an

Ross & Co. v. Redington, 442 U.S. 560, 569 (1979)).  Walzer now concedes that he lacks standing to assert this claim, but seeks leave to "bring the SEC in" to do so.  (Appellant's Br. at 53.)  There is no basis for that request.

[7] Walzer may have waived his right to appellate review of the Magistrate Judge's orders disallowing discovery and staying proceedings pending the FINRA arbitration because he did not seek reconsideration by the District Court.  See 28 U.S.C. § 636(b)(1)(A); Siers v. Morrash, 700 F.2d 113, 114-16 (3d Cir. 1983).  Walzer, however, properly sought reconsideration of the Magistrate Judge's order permitting defendants to file their motion to dismiss.  (Docket No. 206.)  Our review of that issue effectively resolves the others as well because Walzer's underlying argument relates to all three issues.

11

open question, but we did not require or preclude any particular proceedings in that regard. See id. Nor did Walzer suffer any conceivable prejudice from the stay of federal proceedings pending the FINRA arbitration. Thus, the District Court did not abuse its discretion in these respects.

Walzer also argues that the District Court should not have entertained defendants' motions to dismiss because they were successive motions in violation of Rule 12(g)(2). (Appellant's Br. at 12-18.) That rule prohibits successive Rule 12(b)(6) motions raising "a defense or objection that was available to the party but omitted from its earlier motion." See Fed. R. Civ. P. 12(g)(2). We need not decide whether the District Court entertained defendants' motions in technical violation of this rule, however, because any error in that regard would be harmless. See 28 U.S.C. § 2111 ("On the hearing of any appeal . . ., the court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties.").

Walzer did not state a federal claim for the reasons discussed above, and defendants did not waive that defense by not including it in their respective initial Rule 12(b)(6) motions. See Fed. R. Civ. P. 12(h)(2). Instead, it remained available to them in a motion for judgment on the pleadings under Rule 12(c). See id. The District Court properly accepted all of Walzer's factual allegations as true for purposes of defendants' later Rule 12(b)(6) motions. Thus, it is as though defendants had filed answers admitting those allegations and then filed their motions under Rule 12(c) rather than Rule 12(b)(6). Requiring them to take those additional steps would have served no practical purpose

12

under the circumstances presented here.[8]

We have reviewed the remainder of Walzer's arguments and conclude that they lack merit as well.[9]

### III.

For the foregoing reasons, we will affirm the judgment of the District Court. The parties' requests for sanctions are denied, but we will tax costs against Walzer pursuant to Fed. R. App. P. 39(a)(2). We also deny Walzer's motion for reconsideration of the May 11, 2011 Clerk's order permitting defendants to file a supplemental appendix and defendants' motion to strike the documents attached to the hard copy of Walzer's reply brief.

---

[8] Walzer raised this argument in his first motion for reconsideration, and the District Court rejected it for essentially the same reason that we do. (Docket No. 236 at 19-20.) The District Court also faulted Walzer for failing to raise the argument in opposition to defendants' motion to dismiss. We agree with Walzer that he had indeed raised the argument (e.g., Docket No. 216-2), but that point is moot because the District Court addressed the argument's substance and it lacks merit in any event.

[9] Those arguments are that defendants failed to serve him with their response to his first motion for reconsideration, that the District Court "ignored" his own request for arbitration, and that he can amend his complaint to name additional defendants and assert additional claims. Walzer also alleges numerous perceived errors and improprieties in the FINRA arbitration. Those allegations are not properly before us.