**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 14-4073

———————

MARK LEYSE,

Individually and on behalf of all others similarly situated,

Appellant

v.

BANK OF AMERICA NATIONAL ASSOCIATION

———————

On Appeal from the United States District Court
for the District of New Jersey

(D.C. Civ. No. 2-11-cv-07128)

District Judge: Honorable Susan D. Wigenton

———————

Argued: July 7, 2015

Before: FUENTES, SLOVITER, and ROTH, *Circuit Judges*

(Opinion Filed:  October 14, 2015 )

Todd C. Bank *ARGUED*
119-40 Union Turnpike
Fourth Floor
Kew Gardens, NY 11415

*Attorney for Appellant*

Joseph R. Palmore *ARGUED*
Morrison & Foerster LLP
2000 Pennsylvania Avenue N.W.
Suite 6000
Washington, DC 20006

Mark P. Ladner
David J. Fioccola
Adam J. Hunt
Morrison & Foerster LLP
250 West 55 Street
New York, NY 10019-9601

*Attorneys for Appellee Bank of America National Association*

---

OPINION OF THE COURT

---

FUENTES, Circuit Judge.

Mark Leyse brought an action under the Telephone Consumer Protection Act after receiving a prerecorded telemarketing call on the landline he shares with his

2

roommate. Leyse was not the intended recipient of the call—his roommate was. For this reason, the District Court dismissed the complaint for lack of statutory standing. We find that it was error for the District Court to consider the motion to dismiss, which raised an argument that could have been raised in an earlier motion to dismiss. As the procedural error was harmless, however, we reach the merits and conclude that Leyse has statutory standing. His status as a regular user of the phone line and occupant of the residence that was called brings him within the language of the Act and the zone of interests it protects.

## I. Background

A telemarketer seeking to advertise credit cards for Bank of America called the phone shared by Mark Leyse and his roommate, Genevieve Dutriaux. It is undisputed that Dutriaux was the telephone subscriber and intended recipient of the call, as the number was associated with her name in the telemarketing company's records. When the phone was answered—the complaint does not specify whether either roommate or the answering machine picked up—a prerecorded message played.

This message allegedly violated the advertising restrictions of the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227, as well as its associated regulations. The Act prohibits any person from, among other things, "initiat[ing] any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order by the [Federal Communications]

3

Commission." *Id.* § 227(b)(1)(B).[1] As a result of the prerecorded message, a lawyer representing Dutriaux and Leyse filed several class-action lawsuits against Bank of America in multiple districts. The action on appeal before us is from the District of New Jersey. Leyse is the only named plaintiff.

Bank of America filed a Rule 12(b)(6) motion to dismiss on grounds of collateral estoppel, arguing that one of the prior lawsuits had been decided against Leyse in a manner that precluded further litigation. The District Court agreed and further found that Leyse's complaint was time-barred. On appeal, a panel of this Court initially affirmed, then changed its mind on panel rehearing. The panel found that the statute of limitations was tolled, and that collateral estoppel was inapplicable because it was unclear whether the dispositive issue here was actually adjudicated in the prior lawsuit. In vacating the dismissal, the panel noted that on remand, Bank of America might be able to argue that Leyse lacked statutory standing as the unintended recipient of the automated call.

Bank of America did just that. It filed a second Rule 12(b)(6) motion to dismiss, arguing that Leyse was not the "called party" identified in § 227(b)(1)(B) and therefore did not have statutory standing to bring suit. Leyse responded that the motion was procedurally improper under Rule 12, as the Bank could have raised its statutory standing argument in

[1] Although it is not relevant to this appeal, Bank of America's position is that the call was an "abandoned" call of the sort permitted by 47 C.F.R. § 64.1200(a)(7).

4

its previous motion but chose not to. He also contended another part of the statute, § 227(b)(3), gives a private right of action to any "person or entity" injured by the violation—not merely the "called party."

The District Court sided with Bank of America on both questions and dismissed Leyse's complaint. It reasoned that Leyse was not the "called party," which it defined as the intended recipient of the call, and therefore did not fall within the class of plaintiffs authorized to sue under the Telephone Consumer Protection Act. Leyse appealed.[2]

## II. Discussion

### A. Rule 12 Restrictions on Successive Motions to Dismiss

Leyse's first argument on appeal is that the District Court erred in considering Bank of America's second motion to dismiss, which he contends was filed in violation of the

---

[2] Although our Court had previously held otherwise, "federal and state courts have concurrent jurisdiction over private suits arising under the [Telephone Consumer Protection Act]." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012). The District Court therefore had federal-question jurisdiction under 28 U.S.C. § 1331. We have jurisdiction to hear the appeal under 28 U.S.C. § 1291. We exercise plenary review over a district court's grant of a Rule 12(b)(6) motion and over issues of statutory interpretation. *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 268 (3d Cir. 2013).

5

Federal Rules of Civil Procedure. His claim of error is valid, but it does not warrant reversal.

The Rules impose restrictions on the filing of successive motions to dismiss: "Except as provided in Rule 12(h)(2) or (3), a party that makes a motion under [Rule 12] must not make another motion under [Rule 12] raising a defense or objection that was available to the party but omitted from its earlier motion." Fed. R. Civ. P. 12(g)(2). This "consolidation rule" is intended "to eliminate unnecessary delay at the pleading stage" by encouraging "the presentation of an omnibus pre-answer motion in which the defendant advances every available Rule 12 defense" simultaneously rather than "interposing these defenses and objections in piecemeal fashion." Charles Alan Wright & Arthur R. Miller, 5C Fed. Prac. & Proc. Civ. § 1384 (3d ed. 2014).

Bank of America's first motion to dismiss, which asserted collateral estoppel, was expressly brought under Rule 12. *See also Metro. Edison Co. v. Pa. Pub. Util. Comm'n*, 767 F.3d 335, 350 n.19 (3d Cir. 2014) (noting that collateral estoppel is a permissible basis for a Rule 12(b)(6) motion to dismiss for failure to state a claim). As Bank of America concedes, it could have argued in this motion that Leyse lacked statutory standing, but it did not. Thus, unless one of the exceptions specified in Rule 12(g)(2) applies—*i.e.*, those established in Rule 12(h)(2) and (3)—the Bank's subsequent Rule 12 motion to dismiss on statutory standing grounds was procedurally barred.

The second motion to dismiss does not qualify for the Rule 12(h)(3) exception, which exempts only motions to dismiss for lack of subject-matter jurisdiction. Unlike Article

6

III standing, statutory standing is not jurisdictional. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1388 & n.4 (2014). Statutory standing goes to whether Congress has accorded a particular plaintiff the right to sue under a statute, but it does not limit the power of the court to adjudicate the case. *See id.* As a result, "[a] dismissal for lack of statutory standing is effectively the same as a dismissal for failure to state a claim," and a motion to dismiss on this ground is brought pursuant to Rule 12(b)(6), rather than Rule 12(b)(1). *Baldwin v. Univ. of Pittsburgh Med. Ctr.*, 636 F.3d 69, 73-74 (3d Cir. 2011); *see also Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 307 (3d Cir. 2011).[3]

The motion does not fall within the Rule 12(h)(2) exception either. Under this provision, a successive motion to dismiss for "[f]ailure to state a claim . . . may be raised (A) in

---

[3] We have, in the past, suggested that "statutory standing is an issue of subject matter jurisdiction." *Graden v. Conexant Sys. Inc.*, 496 F.3d 291, 294 (3d Cir. 2007). But we have since retreated from this characterization, and the Supreme Court has made clear that it is incorrect. Indeed, our description of statutory standing in *Graden* showed that it was non-jurisdictional. *See id.* at 295 ("Though all are termed 'standing,' the differences between statutory, constitutional, and prudential standing are important. Constitutional and prudential standing are about, respectively, the constitutional power of a federal court to resolve a dispute and the wisdom of so doing. Statutory standing is simply statutory interpretation: the question it asks is whether Congress has accorded *this* injured plaintiff the right to sue the defendant to redress his injury." (citations omitted)).

7

any pleading allowed or ordered under Rule 7(a); (B) by a motion under Rule 12(c); or (C) at trial." Fed. R. Civ. P. 12(h)(2). Bank of America's second motion to dismiss was plainly neither a Rule 7(a) pleading nor a motion raised at trial. Nor was it a Rule 12(c) motion for judgment on the pleadings, which may be filed only "[a]fter the pleadings are closed." Fed. R. Civ. P. 12(c). Thus, because no exception to Rule 12(g)(2) covers Bank of America's successive motion, it was improper to consider that motion.

The District Court's conclusion to the contrary was error. Following other district court decisions, the District Court held that it could consider Bank of America's second motion to dismiss because the previous motion had not "examine[d] the *substance*" of Leyse's claims but rather challenged it on collateral estoppel grounds. (App. 8 n.3 (quoting *Walzer v. Muriel Siebert & Co.*, Civ. No. 04-5672 (DRD), 2010 WL 4366197, at *10 (D.N.J. Oct. 28, 2010), *aff'd sub nom. Walzer v. Muriel Siebert & Co.*, 447 F. App'x 377 (3d Cir. 2011)).) The procedural bar of Rule 12(g)(2), however, covers all motions to dismiss for failure to state a claim, regardless of the grounds asserted. The District Court provided no basis for concluding otherwise, and we see none. Indeed, Bank of America easily could have included its statutory standing argument in the same motion as its collateral estoppel argument, which is the sort of consolidation that Rule 12(g)(2) is meant to encourage. If it had done so, it is likely that one of the two appeals could have been avoided.[4]

---

[4] Bank of America seems to suggest that when the case was previously on appeal, the panel expressly gave it permission

8

We also recognize that the Court of Appeals for the Seventh Circuit would find no error on the facts before us. In *Ennenga v. Starns*, the defendants filed two pre-answer motions to dismiss under Rule 12(b)(6), only the second of which argued that the plaintiffs' claims were untimely. In finding the second motion proper, the Seventh Circuit held that "Rule 12(g)(2) does not prohibit a new Rule 12(b)(6) argument from being raised in a successive motion" because "Rule 12(h)(2) specifically excepts failure-to-state-a-claim defenses from the Rule 12(g) consolidation requirement." 677 F.3d 766, 773 (7th Cir. 2012). We respectfully disagree. Like the Tenth Circuit, we find that *Ennenga*'s logic "fails to address the language from Rule 12(h)(2) that arguably limits a party to presenting [successive failure-to-state-a-claim] arguments in a pleading, a motion for judgment on the pleadings, or at trial." *See Albers v. Bd. of Cnty. Comm'rs of Jefferson Cnty., Colo.*, 771 F.3d 697, 703 (10th Cir. 2014).

---

to raise the issue of statutory standing in a subsequent motion. *See Leyse v. Bank of Am., Nat. Ass'n*, 538 F. App'x 156, 162 (3d Cir. 2013). The panel did not address Rule 12(g)(2), however, and it did not specify that the Bank was permitted to file another pre-answer motion, as opposed to the post-answer Rule 12(c) motion contemplated by Rule 12(h)(2). The panel's passing comment certainly does not constitute "law of the case." *See, e.g.*, *Pub. Interest Research Grp. of New Jersey, Inc. v. Magnesium Elektron, Inc.*, 123 F.3d 111, 116 (3d Cir. 1997) ("The law of the case doctrine directs courts to refrain from re-deciding issues that were resolved earlier in the litigation. . . . [The] doctrine does not limit a federal court's power; rather, it directs its exercise of discretion.").

The Sixth Circuit would likely agree with us as well. *See English v. Dyke*, 23 F.3d 1086, 1090-91 (6th Cir. 1994).

Despite the District Court's error, it does not follow that we must vacate its decision. When considering an appeal, we must give judgment "without regard to errors or defects which do not affect the substantial rights of the parties." 28 U.S.C. § 2111. A district court's decision to consider a successive Rule 12(b)(6) motion to dismiss is usually harmless, even if it technically violates Rule 12(g)(2). So long as the district court accepts all of the allegations in the complaint as true, the result is the same as if the defendant had filed an answer admitting these allegations and then filed a Rule 12(c) motion for judgment on the pleadings, which Rule 12(h)(2)(B) expressly permits.

Requiring these additional steps would serve little purpose here. If we vacate and remand without ruling on the merits, Bank of America will inevitably raise its arguments in a post-answer Rule 12(c) motion, and the case will come up on appeal a third time. Creating such delay seems contrary to the purposes of Rule 12(g)(2).[5] We note that in so holding,

---

[5] We emphasize that district courts should enforce Rule 12(g)(2) even if their failure to do so is not a ground for reversal. Although some courts and commentators believe that allowing successive pre-answer motions to dismiss avoids delay, this seems to us like short-term thinking. In any given case, requiring a defendant to file an answer and then a Rule 12(c) motion will take more time than allowing it to file a successive pre-answer Rule 12(b)(6) motion. But over the long term, stringent application of Rule 12(g)(2) may

10

we are in agreement with the Tenth Circuit, which declined to reverse on similar facts because the asserted Rule 12(g)(2) error was harmless. *See Albers*, 771 F.3d at 703-04. We therefore proceed to the merits.

## B.     Statutory Standing under the Telephone Consumer Protection Act

### 1.     Background

The Telephone Consumer Protection Act was intended to combat, among other things, the proliferation of automated telemarketing calls (known as "robocalls") to private residences, which Congress viewed as a nuisance and an invasion of privacy. *See Mims*, 132 S. Ct. at 745. To this end, the Act makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes or is exempted by rule or order by the Commission." 47 U.S.C. § 227(b)(1)(B). In the same subsection of the Act, the paragraph captioned "Private right of action" provides that a "person or entity" may bring an

---

motivate defendants to consolidate their arguments in a single pre-answer motion, especially if they know that the district court will not stay discovery while a post-answer Rule 12(c) motion is pending. Granted, the logic of deterrence could also support enforcing Rule 12(g)(2) on appeal. The length of the appellate process, however, increases the costs of enforcement and suggests that the balance should be struck differently.

11

action to enjoin violations of the statute and recover actual damages or $500 in statutory damages per violation. *Id.* § 227(b)(3).

District courts throughout the country have split over the question of who is entitled to sue under the statute, and they fall into various camps. Some district court cases hold that statutory standing is limited to the "called party," which they define as the "intended recipient" of the call.[6] Others indicate that statutory standing is limited to the "called party" but define that term as the "subscriber" or "regular user" of the phone.[7] Several cases do not invoke the statutory term "called party" but nevertheless find it prudent to limit statutory standing to the "subscriber" or "primary user."[8]

---

[6] *Cellco P'ship v. Wilcrest Health Care Mgmt. Inc.*, No. CIV.A. 09-3534 MLC, 2012 WL 1638056, at *7 (D.N.J. May 8, 2012); *Cellco P'ship v. Dealers Warranty, LLC*, No. CIV.A. 09-1814 FLW, 2010 WL 3946713, at *9-10 (D.N.J. Oct. 5, 2010); *Leyse v. Bank of Am., Nat. Ass'n*, No. 09 CIV. 7654 (JGK), 2010 WL 2382400, at *3-6 (S.D.N.Y. June 14, 2010).

[7] *Soulliere v. Cent. Florida Inv., Inc.*, No. 8:13-CV-2860-T-27AEP, 2015 WL 1311046, at *5 (M.D. Fla. Mar. 24, 2015); *Pacleb v. Cops Monitoring*, No. 2:14-CV-01366-CAS, 2014 WL 3101426, at *2-3 (C.D. Cal. July 7, 2014); *Fini v. Dish Network L.L.C.*, 955 F. Supp. 2d 1288, 1296 & n.6 (M.D. Fla. 2013).

[8] *Olney v. Progressive Cas. Ins. Co.*, 993 F. Supp. 2d 1220, 1225 (S.D. Cal. 2014); *Cellco P'ship v. Plaza Resorts Inc.*, No. 12-81238-CIV, 2013 WL 5436553, at *5 (S.D. Fla. Sept.

And many cases reject the "called party" approach on the ground that the Act authorizes any "person or entity" to sue.[9]

The District Court here falls into the first camp. It dismissed Leyse's claim on the ground that, as the "unintended and incidental recipient" of a call directed to his roommate, he was not the "called party" and therefore had no right to sue under the Act. (App. 13.) We, however, do not

---

27, 2013); *Gutierrez v. Barclays Grp.*, No. 10CV1012 DMS BGS, 2011 WL 579238, at *5 (S.D. Cal. Feb. 9, 2011).

[9] *Gesten v. Stewart Law Grp., LLC*, 67 F. Supp. 3d 1356, 1359 (S.D. Fla. 2014); *Meyer v. Diversified Consultants, Inc.*, No. 3:14-CV-393-J-34JBT, 2014 WL 5471114, at *2 (M.D. Fla. Oct. 29, 2014); *Moore v. Dish Network L.L.C.*, 57 F. Supp. 3d 639, 648-51 (N.D.W. Va. 2014); *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 682 (S.D. Fla. 2013); *Swope v. Credit Mgmt., LP*, No. 4:12CV832 CDP, 2013 WL 607830, at *2-3 (E.D. Mo. Feb. 19, 2013); *Page v. Regions Bank*, 917 F. Supp. 2d 1214, 1216-18 (N.D. Ala. 2012); *Harris v. World Fin. Network Nat. Bank*, 867 F. Supp. 2d 888, 894 (E.D. Mich. 2012); *Kane v. Nat'l Action Fin. Servs., Inc.*, No. 11-CV-11505, 2011 WL 6018403, at *7 (E.D. Mich. Nov. 7, 2011); *D.G. v. Diversified Adjustment Serv., Inc.*, No. 11 C 2062, 2011 WL 5506078, at *2 (N.D. Ill. Oct. 18, 2011); *Tang v. Med. Recovery Specialists, LLC*, No. 11 C 2109, 2011 WL 6019221, at *2 (N.D. Ill. July 7, 2011); *D.G. ex rel. Tang v. William W. Siegel & Associates, Attorneys at Law, LLC*, 791 F. Supp. 2d 622, 624-25 (N.D. Ill. 2011); *Anderson v. AFNI, Inc.*, No. CIV.A. 10-4064, 2011 WL 1808779, at *7-8 (E.D. Pa. May 11, 2011).

13

agree that the caller's intent circumscribes standing, and we find that Leyse falls within the class of plaintiffs Congress has authorized to sue.

## 2. The zone of interests protected by the Act

The paragraph that establishes the "[p]rivate right of action" for violations of the Act's robocall provisions permits any "person or entity" to file a lawsuit. 47 U.S.C. § 227(b)(3). The text of this provision does not limit the universe of plaintiffs who may file suit in federal court.[10]

Even if this were all the Act said (which it is not), Congress's broad grant of statutory standing would not enable every "person or entity" to sue under the Act. Article III of the Constitution imposes its own standing requirements, and only certain plaintiffs will have suffered the particularized injury required to maintain an action in federal court for a statutory violation. *See Raines v. Byrd*, 521 U.S. 811, 818-20 & n.3 (1997); *Doe v. Nat'l Bd. of Med. Examiners*, 199 F.3d

---

[10] In full, the relevant portion of the paragraph states that "[a] person or entity may, if otherwise permitted by the laws or rules of court of a State, bring [an action] in an appropriate court of that State." 47 U.S.C. § 227(b)(3). But it "does not state that a private plaintiff may bring an action under the [Act] 'only' in state court, or 'exclusively' in state court," and as a result the Supreme Court has held that federal courts have concurrent jurisdiction over such actions. *Mims*, 132 S. Ct. at 750. Any limitations imposed by "the laws or rules of court of a State" presumably would not apply in federal court.

14

146, 153 (3d Cir. 1999).[11]   Someone with a generalized interest in punishing telemarketers, for example, would not qualify on that basis alone.  *Cf. Lujan v. Defenders of Wildlife*, 504 U.S. 555, 578 (1992).

But here, Article III is not the only barrier faced by potential plaintiffs.  Congress surely did not intend, for example, to enable a plaintiff to sue merely because she learned that a friend or neighbor had received a robocall.  This commonsense judgment is embodied in an interpretive doctrine of special importance here: the "presum[ption] that a statutory cause of action extends only to plaintiffs whose interests 'fall within the zone of interests protected by the law invoked.'"  *Lexmark Int'l*, 134 S. Ct. at 1388 (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)).

The Supreme Court's decision in *Lexmark* is instructive.  There, the Court was called upon to construe the Lanham Act, which "authorizes suit by 'any person who believes that he or she is likely to be damaged' by a defendant's false advertising."  *Id.* at 1388 (quoting 15 U.S.C. § 1125(a)(1)).  "Read literally, that broad language might suggest that an action is available to anyone who can satisfy the minimum requirements of Article III."  *Id.*  The Supreme Court, however, found it unlikely that "Congress meant to allow all factually injured plaintiffs to recover."  *Id.*  (internal quotation marks omitted).

---

[11] Notably, the Supreme Court has granted *certiorari* in a case that will require it to consider the limits on Congress's power to confer Article III standing on plaintiffs.  *See Spokeo, Inc. v. Robins*, 135 S. Ct. 1892 (2015).

15

Instead, the Court invoked the "presum[ption] that a statutory cause of action extends only to plaintiffs whose interests 'fall within the zone of interests protected by the law invoked.'" *Id.* (quoting *Allen*, 468 U.S. at 751). Because Congress is assumed to legislate against the background of this "zone of interests" limitation, it "applies to all statutorily created causes of action." *Id.* The breadth of the zone of interests depends on the provisions and purposes of the statute being analyzed. *See id.* In *Lexmark*, the Court analyzed the Lanham Act's detailed list of purposes and concluded that a false-advertising plaintiff "must allege an injury to a commercial interest in reputation or sales," rather than injury to its interests as a consumer of a product. *Id.* at 1390.

We apply a similar analysis here. Within the subsection of the Act at issue in this appeal, 47 U.S.C. § 227(b) (entitled "Restrictions on use of automated telephone equipment"), the first paragraph sets forth "[p]rohibitions," *id.* § 227(b)(1); the second discusses the FCC's authority to promulgate "[r]egulations," *id.* § 227(b)(2); and the third creates a "[p]rivate right of action" for "a violation of this subsection," *id.* § 227(b)(3).[12] In order to delineate the zone of interests protected by the statute, it makes sense to start by looking at the prohibitions that the private right of action is intended to enforce.

---

[12] In using the term "subsection," Congress ordinarily refers to the statutory subdivisions that are labeled with lowercase letters—(a), (b), (c), and so forth. Within subsections, "paragraphs" are labeled with numbers, and "subparagraphs" are labeled with uppercase letters. *See Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 60-61 (2004).

16

The "Prohibitions" paragraph makes it "unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States," to transmit certain types of telephone calls and facsimiles. *Id.* § 227(b)(1). It contains four subparagraphs, each of which identifies the "recipient" and type of communication at issue. *Id.*

The first subparagraph forbids using an "automated telephone dialing system or an artificial or prerecorded voice" without the consent of the "called party" when calling emergency telephone lines, hospital patient rooms, pagers, cell phones, or any service for which the "called party" would be charged. *Id.* § 227(b)(1)(A). The second subparagraph, which Bank of America is accused of violating, proscribes "using an artificial or recorded voice" when calling "any residential telephone line" without the consent of the "called party." *Id.* § 227(b)(1)(B). The third prohibits sending "unsolicited advertisement[s]" by facsimile to a "recipient." *Id.* § 227(b)(1)(C). And the fourth prohibits using "an automatic telephone dialing system" to tie up two or more telephone lines of a "multi-line business" simultaneously. *Id.* § 227(b)(1)(D).

In the subparagraph at issue here, the "called party" is relevant because its prior consent to receiving robocalls provides a defense to liability. *Id.* § 227(b)(1)(B). Thus, although Congress did not expressly limit standing to the "called party," its primary concern in enacting § 227(b)(1)(B) was to protect that party from unwanted robocalls. This necessarily means that the "called party" is within the zone of interests protected by the Act.

17

The District Court determined that the term "called party" refers to the intended recipient of the robocall, rather than the actual recipient. And, because Leyse was not the intended recipient, the Court held he lacked standing. There are good reasons to doubt the equation of "intended recipient" with "called party,"[13] but the parties did not brief the issue,

[13] In its findings in support of the Act, Congress appears to equate the "called party" with the "receiving party." Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(12), 105 Stat. 2394 (note following 47 U.S.C. § 227). Subsection 227(b)(1) itself suggests that the "called party" is the actual "recipient." 47 U.S.C. § 227(b)(1). Indeed, we referred to it as the "recipient" in another case construing the Act. *See Gager*, 727 F.3d at 269. The Seventh and Eleventh Circuits have concluded from the Act's text and structure that the term "called party" refers to "the person subscribing to the called number at the time the call is made," rather than the intended recipient of the call. *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 643 (7th Cir. 2012); *see also Osorio*, 746 F.3d at 1251-52. Their reasoning also suggests, however, that the "person who answers the call" may qualify as well. *Soppet*, 679 F.3d at 640. Perhaps most significantly, however, the FCC recently issued a declaratory ruling defining "called party" as "the subscriber, *i.e.*, the consumer assigned the telephone number dialed and billed for the call, or the non-subscriber customary user of a telephone number included in a family or business calling plan." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, WC Docket No. 07-135, FCC 15-72, 2015 WL 4387780, at

and we need not decide it here. This is because—as was the case with the Lanham Act in *Lexmark*—Congress made several findings in the Telephone Consumer Protection Act that allow us to trace the contours of the protected zone of interests. The zone protected by § 227(b)(1)(B) may well be coextensive with the scope of the term "called party." But given the existence of relevant congressional findings, we may determine whether Leyse has statutory standing without first concluding that he is a "called party."

In passing the Act, Congress was animated by "outrage[] over the proliferation" of prerecorded telemarketing calls to private residences, which consumers regarded as "an intrusive invasion of privacy" and "a nuisance." Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5)-(6), (10), 105 Stat. 2394 (note following 47 U.S.C. § 227); *see also id.* § 2(9), (12)-(13). The congressional findings describe the persons aggrieved by these calls using a variety of labels: "consumers," "residential telephone subscribers," and "receiving part[ies]." *Id.* § 2(5)-(6), (10)-(12).

The task facing Congress was that "[i]ndividuals' privacy rights, public safety interests, and commercial freedoms of speech and trade must be balanced in a way that protects the privacy of individuals and permits legitimate

---

*26 ¶ 73 (F.C.C. July 10, 2015) (Declaratory Ruling and Order); *see also id.* at *26-27 ¶¶ 72-77, *28 ¶ 78 (rejecting "proposals that we interpret 'called party' to be the 'intended recipient' or 'intended called party'").

19

telemarketing practices." *Id.* § 2(9). In striking this balance, Congress determined that "[b]anning . . . automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion." *Id.* § 2(12).

As was forcefully stated by Senator Hollings, the Act's sponsor, "Computerized calls are the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall." 137 Cong. Rec. 30,821-22 (1991). Although his views are not controlling, *see Mims*, 132 S. Ct. at 752, they are consistent with the findings that appear in the text of the Act, and it is relevant that he emphasized the potential of robocalls to harass the occupants of private residences. *See also Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1258 (11th Cir. 2014) (noting that a purpose of the Act is to protect "residential privacy").

From this evidence, it is clear that the Act's zone of interests encompasses more than just the intended recipients of prerecorded telemarketing calls. It is the actual recipient, intended or not, who suffers the nuisance and invasion of privacy. This does not mean that all those within earshot of an unwanted robocall are entitled to make a federal case out of it. Congress's repeated references to privacy convince us that a mere houseguest or visitor who picks up the phone would likely fall outside the protected zone of interests. On the other hand, a regular user of the phone line who occupies the residence being called undoubtedly has the sort of interest

in privacy, peace, and quiet that Congress intended to protect.[14]

Limiting standing to the intended recipient would disserve the very purposes Congress articulated in the text of the Act. If the caller intended to call one party *without its consent* but mistakenly called another, neither the actual recipient nor the (uninjured) intended recipient could sue, even if the calls continued indefinitely. We doubt Congress meant to leave the actual recipient with no recourse against even the most unrelenting caller.

The District Court, however, focused on the plight of the callers, many of whom manage to obtain the consent of their intended recipients. It reasoned as follows:

> If any person who . . . answers the telephone call has standing to sue, then businesses will never be certain when . . . placing a call with a prerecorded message would be a violation of the TCPA. Under the statute, a business is permitted to send a . . . phone call with a prerecorded message to persons who have given prior express consent . . . . When a business places such a call[,] . . . it does not know whether the intended recipient or a roommate or employee will answer the phone . . . . If the

---

[14] Bank of America suggests that standing must be limited to one person because the Act authorizes only one $500 award per violation. *See* 47 U.S.C. § 227(b)(3)(B). Putting aside the fact that § 227(b)(3) makes available other forms of relief, we see no reason why the statutory sum could not be divided among the injured parties.

21

> business is liable to whomever happens to
> answer the phone[,] . . . a business could face
> liability even when it intends in good faith to
> comply with the provisions of the TCPA.

(App. 12 (quoting *Leyse*, 2010 WL 2382400, at *4).)

The District Court's concerns are misplaced. The caller may invoke the consent of the "called party" as a defense even if the plaintiff is someone other than the "called party." Thus, if Dutriaux were the "called party" by virtue of being the intended recipient of the call, her consent to receive robocalls would shield Bank of America from any suit brought by Leyse. We would not need to deny statutory standing to Leyse in order to protect Bank of America from unanticipated liability. On the other hand, if Leyse were the "called party" despite being an unintended recipient, it is undisputed that he would have statutory standing regardless of the policy considerations raised by the District Court.[15]

Finally, we observe that "[b]ecause the TCPA is a remedial statute, it should be construed to benefit

---

[15] We note that in the recent declaratory order of the FCC described earlier, the FCC defined the "called party" as the "subscriber" or "customary user" of the phone number and found that it was "reasonable for callers to rely" on "consent to receive robocalls" from either type of called party. *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 2015 WL 4387780, at *26 ¶ 73, *27 ¶¶ 75-76. By this logic, Dutriaux and Leyse would both qualify as "called parties," and consent from either would shield Bank of America from liability.

consumers." *Gager*, 727 F.3d at 271. Even if the various proposed interpretations of the Act were equally plausible—which they are not—the scales would tip in Leyse's favor.

Given the variety of arrangements that exist for sharing living spaces and telephones, there may be close cases under the zone-of-interests test—at least until cell phones entirely displace landlines. Leyse's, however, is by no means a close case. The complaint alleges that Bank of America placed a call "to Leyse's residential telephone line." (App. 21.) At the motion to dismiss stage, we are required to treat this allegation as true, and it places Leyse squarely within the zone of interests.

We would reach the same conclusion even if we were to look beyond the complaint and consider the allegations made by the parties during oral argument and in other actions. The parties agree that Leyse's roommate Dutriaux was the subscriber and intended recipient of the call. But Leyse claims that he regularly used the phone, and the fact that he was Dutriaux's roommate indicates that he, too, had a privacy interest in avoiding telemarketing calls to their shared home. Under the zone-of-interests test, Leyse has alleged enough to survive a motion to dismiss, and it was error for the District Court to dismiss the complaint for lack of statutory standing. We note, however, as we state supra, that it is the actual recipient, intended or not, who suffered the nuisance or invasion of privacy. The burden of proof will, therefore, be on Leyse in the District Court, to demonstrate that he answered the telephone when the robocall was received.

23

### III. Conclusion

For the foregoing reasons, we will vacate the District Court's order of dismissal and remand for further proceedings.